[Nos. G036691, G036794. Fourth Dist., Div. Three. Nov. 14, 2007.]

LA SOUND USA, INC., et al., Plaintiffs, Cross-defendants and Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant,
Cross-complainant and Respondent.

**COUNSEL**

Guy Kornblum & Associates, Guy O. Kornblum, Walter G. Crump and Mukesh Advani for Plaintiffs, Cross-defendants and Appellants.

Lord, Bissell & Brook, Keith G. Wileman, Brenda A. Bissett and Susan J. Welde for Defendant, Cross-complainant and Respondent.

**OPINION**

**IKOLA, J.**—Plaintiffs LA Sound USA, Inc. (LA Sound), LSY Trading Development, Inc. (LSY), Ancle Hsu, and David Ji (collectively, plaintiffs) appeal from a judgment entered in favor of defendant St. Paul Fire & Marine Insurance Company (St. Paul) on plaintiffs' complaint and St. Paul's cross-complaint.

The court correctly entered judgment in favor of St. Paul on plaintiffs' complaint for breach of an insurance policy issued by St. Paul. Plaintiffs contend St. Paul failed to pay all their defense and settlement costs in an underlying action. But LA Sound made material misrepresentations on the insurance application, entitling St. Paul to rescind the policy. Thus, St. Paul had no duty to defend or indemnify plaintiffs at all.

Similarly, the court correctly determined St. Paul was entitled to reimbursement of the defense and settlement costs it paid. But it erred in awarding judgment jointly and severally against all of its insureds. St. Paul failed to present evidence of the amount by which each of its insureds benefited from the defense and settlement costs it had advanced. Thus, we affirm in part, reverse in part, and remand with directions.

## FACTS

*The Underlying "Hollywood Sound" Litigation*

Plaintiffs Hsu and Ji were the officers, directors, and sole shareholders of LA Sound, an audio equipment company. In January 2001, LA Sound and Hollywood Sound, Inc. (Hollywood Sound), entered into a written agreement "to engage in a joint venture for the purpose[] of producing, marketing and selling audio and speaker products." Hsu and Ji were also individual parties to the joint venture agreement. The agreement required Ji, Hsu, and Hollywood Sound's principals to form a new corporation. It further required Hollywood Sound and its principals to grant the new corporation a license to use the Hollywood Sound trademark.

The joint venturers used LSY to begin consolidating their businesses. LSY began advertising and selling LA Sound and Hollywood Sound products.

Six months after the joint venture was formed, an LA Sound employee contacted an insurance broker to renew an expiring St. Paul insurance policy. The broker spoke with the employee for an hour to obtain the information he needed to fill out the application; the broker later called the employee to obtain more information. The broker completed the application and submitted it to St. Paul. The application asked, "HAS APPLICANT BEEN ACTIVE IN OR IS CURRENTLY ACTIVE IN JOINT VENTURES?" and "IS THERE A LABOR INTERCHANGE WITH ANY OTHER BUSINESS OR SUBSIDIARIES?" Boxes were checked indicating the answer to each question was, "NO."

St. Paul issued a new policy, providing $1 million in coverage for liability arising from personal injury or advertising injury. The policy listed LA Sound as a named insured. It extended coverage as "protected persons" to LA Sound's "directors and executive officers . . . only for the conduct of their duties as your directors or executive officers."

Meanwhile, the nascent joint venture stalled. Hollywood Sound sued LA Sound and LSY in October 2001 for unfair competition (trademark infringement). In response, LA Sound, LSY, Hsu and Ji filed a cross-complaint against Hollywood Sound and its principal.

LA Sound and LSY tendered the defense of the Hollywood Sound complaint to St. Paul. St. Paul eventually accepted the defense "of LA Sound, and only LA Sound, under a full reservation of rights." St. Paul noted in its reservation of rights letter, LA Sound's "directors and executive officers are protected persons [under the policy] only for the conduct of their duties as [its] directors or executive officers." St. Paul agreed to pay half of the defense costs, allocating the other half to LSY, which was not a named insured or protected party under the policy.

Later, Hollywood Sound filed its own cross-complaint against LA Sound and LSY, and *also* Hsu, Ji, and another person, asserting claims including trademark infringement. Hollywood Sound alleged Hsu and Ji were officers and directors of LA Sound. It also alleged Hsu and Ji were individually liable for the alleged infringement.

Plaintiffs tendered the defense of the Hollywood Sound cross-complaint to St. Paul. St. Paul ultimately agreed to defend under a reservation of rights and to increase the percentage of defense costs it would pay to 60 percent, as

three of the five cross-defendants were now potentially covered under the policy.

St. Paul negotiated a partial settlement of the Hollywood Sound litigation on behalf of LA Sound, as well as Hsu and Ji in their capacities as LA Sound officers and directors. It agreed to pay $1 million to Hollywood Sound. In exchange, Hollywood Sound agreed to dismiss its claims against LA Sound. The parties further agreed Hollywood Sound would *not* "dismiss claims against Ancle Hsu and David Ji for liability arising from the conduct of those individuals outside of their duties as directors, executive officers or employees of [LA Sound]."

LSY, Hsu, and Ji continued their litigation with Hollywood Sound. They eventually paid $2.85 million to settle the remaining claims.

*The Ensuing Insurance Coverage Action*

After resolving the underlying litigation, plaintiffs filed this insurance coverage action against St. Paul. In the supplemental second amended complaint, plaintiffs alleged St. Paul breached its duties to defend and indemnify them, and did so in bad faith. They sought to recover the percentage of the defense costs that St. Paul did not pay. They further sought to recover the $2.85 million paid to settle the claims against LSY, Hsu, and Ji. St. Paul answered, asserting the affirmative defense of misrepresentation.

St. Paul also filed a cross-complaint. In the first amended cross-complaint, St. Paul alleged the policy should be rescinded, reformed, or voided *ab initio* due to misrepresentation. It also sought reimbursement of the defense and settlement costs it did pay.

After the close of plaintiffs' case, the court granted partial nonsuit to St. Paul. It found plaintiffs could not recover the $2.85 million in settlement costs.

At trial's end, the jury found in favor of St. Paul on the complaint. It returned a special verdict that St. Paul did not breach its duty to defend. The jury did not reach the bad faith cause of action, pursuant to the instructions of the special verdict form.

The court, deciding the equitable issues, found in favor of St. Paul on the misrepresentation cause of action in its cross-complaint. It issued a statement of decision, finding "that coverage under [the policy] is void *ab initio* as to LA Sound and as to all Cross-Defendants for all claims . . . due to material misrepresentations and concealment of facts on the application for the Policy . . . ." The court further found, "St. Paul is entitled to reimbursement of amounts it incurred in defending and settling the *Hollywood Sound* litigation plus prejudgment interest."

The court entered judgment "in favor of St. Paul . . . and against LA Sound USA, Inc., Ancle Hsu and David Ji in this action jointly" for just over $2.78 million, comprising almost $2.4 million in reimbursement for defense and settlement costs and more than $380,000 in simple interest thereon. The court later entered an amended judgment awarding costs to St. Paul, making the "total money Judgment in favor of St. Paul . . . and against LA Sound USA, Inc., Ancle Hsu and David Ji in the amount of $3,185,917.86." Plaintiffs separately appealed from the original judgment and the amended judgment. We consolidated the appeals.

## DISCUSSION

*St. Paul Was Entitled to Rescind the Policy Due to Plaintiffs'*
*Misrepresentations*

█ The finding that the policy was void *ab initio* due to material misrepresentations on the application is at the crux of this case. It supports the judgment in favor of St. Paul on its cross-claim for reimbursement. It also provides independent support for the judgment in favor of St. Paul on the complaint, which was based on the jury's special verdict that St. Paul did not breach its duty to defend. When a policy is void *ab initio*, it is "as though it had never existed." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 184 [243 Cal.Rptr. 639] (*Imperial Casualty*).) A policy void *ab initio* thus cannot be breached.

█ When a policyholder conceals or misrepresents a material fact on an insurance application, the insurer is entitled to rescind the policy. "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract . . . ." (Ins. Code, § 332.)[1] Concealment, which is the "[n]eglect to communicate that which a party knows, and ought to communicate" (§ 330), "entitles the injured party to rescind insurance" (§ 331). Similarly, "[i]f a representation is false in a material point . . . the injured party is

---

[1] All further statutory references are to the Insurance Code unless otherwise stated.

entitled to rescind the contract from the time the representation becomes false." (§ 359.) "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable." (*Imperial Casualty, supra,* 198 Cal.App.3d at p. 182.)

Substantial evidence shows LA Sound concealed and misrepresented its involvement with Hollywood Sound on the insurance application. The application asked whether LA Sound had been or was currently involved in a joint venture, and whether it had a labor interchange with any other business. In fact, LA Sound had been involved in the joint venture with Hollywood Sound for six months at the time of the application, sharing employees with LSY in the process. Nonetheless, the application indicated the answer to each question was, "NO." These false answers entitled St. Paul to rescind the policy, rendering it void *ab initio.* (§§ 331, 359; *Imperial Casualty, supra,* 198 Cal.App.3d at p. 182.)

Plaintiffs muster a small army of arguments attacking this result. The arguments do not rise to the challenge.

Plaintiffs contend St. Paul did not rescind the policy at all. They note St. Paul did not provide written notice of rescission or offer to restore the contract benefits it received, i.e., policy premiums. (Civ. Code, § 1691.) On the other hand, they concede "the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Civ. Code, § 1691, subd. (b).) St. Paul filed and served an answer asserting the affirmative defense of misrepresentation. It alleged material misrepresentations in the application rendered the policy "voidable, and/or subject to reformation or rescission." St. Paul also filed and served a cross-complaint asserting a cause of action for misrepresentation, in which it sought "rescission or appropriate reformation or voidance of the Policy . . . ." These pleadings satisfy St. Paul's responsibility to provide notice and to offer restoration. (Civ. Code, § 1691.) And by finding the policy was void *ab initio,* the court effectively rescinded the policy. (*Imperial Casualty, supra,* 198 Cal.App.3d at pp. 182, 184 [rescission renders policy "totally unenforceable from the outset"; policy voided *ab initio* is "as though it had never existed"].)

In a twist on this argument, plaintiffs contend St. Paul cannot rescind the policy because plaintiffs sued first. They rely on section 650, which provides, "[w]henever a right to rescind a contract of insurance is given to the

insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract." Section 650 was definitively interpreted in *Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 163 [49 Cal.Rptr.2d 354]. There, the Court of Appeal held section 650 bars an insurer only from filing a *separate* suit for judicial rescission once a policyholder has filed an action to enforce the policy. (*Resure*, at pp. 166–167.) It does not deprive insurers of their right under Civil Code section 1691 to provide the required notice and offer to restore simply by serving a pleading seeking rescission. (*Resure*, at pp. 161, 165–167.) And it does not undermine the "[e]stablished law" that "clearly affords the insurer the right to avoid coverage by way of cross-claims and affirmative defenses when the insured files an action on the contract before the insurer can file its action for rescission." (*Id.* at p. 163.) Because St. Paul sought rescission by way of its cross-complaint and answer, not through a separate action, section 650 does not bar it from rescinding the policy.

■ Next, plaintiffs contend LA Sound is not liable for the misrepresentations on the application. They claim LA Sound did not know about the joint venture. They further claim the insurance broker was St. Paul's agent and solely responsible for the application's accuracy. But LA Sound was a *party* to the joint venture agreement. And an insurance broker by definition represents policyholders, not insurers. (§§ 33, 1623.) The LA Sound employee and the broker each testified the broker acted as LA Sound's agent in obtaining the policy from St. Paul.[2] That the broker represented other policyholders in their dealings with St. Paul, as plaintiffs note, does not make him its agent. As a matter of law, "if [an insurance] application was prepared by an insurance *broker* (the agent of the insured), the application's contents are the *insured's* responsibility . . . ." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶ 2:83, p. 2-32.1 (rev. #1, 2007); accord, *Imperial Casualty, supra,* 198 Cal.App.3d at pp. 178–179 [policyholders liable for misrepresentations in broker-prepared application].) LA Sound, not its broker, is responsible for the misrepresentations in the application.

■ Plaintiffs further assert the misrepresentations were immaterial. "Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. [Citations.] The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." (*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 [109

---

[2] Taking a snippet out of context, plaintiffs claim the broker testified he had "binding authority" on behalf of St. Paul to issue the policy. In context, the broker testified only that St. Paul had agreed to extend coverage under LA Sound's existing, expiring policy until the broker could submit a "broker of record" letter and the new application.

Cal.Rptr. 473, 513 P.2d 353].) LA Sound applied for a policy covering advertising injury; the application specifically asked whether LA Sound was involved in joint ventures; the application misrepresented LA Sound's involvement in a joint venture to market audio products; and LA Sound filed a claim asking St. Paul to defend trademark infringement claims related to the joint venture. It is difficult to conceive of a more material misrepresentation.[3]

Moreover, St. Paul's senior underwriter testified to the misrepresentation's materiality. She explained joint ventures pose increased risks, require additional underwriting, and warrant charging "an additional premium" before St. Paul will cover them. Thus, the misrepresentation is also material because it affected St. Paul's evaluation of risk and the amount of the premium charged. (*Old Line Life Ins. Co. v. Superior Court* (1991) 229 Cal.App.3d 1600, 1604 [281 Cal.Rptr. 15].) Contrary to plaintiffs' claim, St. Paul had no obligation to produce the specific underwriter who reviewed the application. Materiality may be shown by the effect of the misrepresentation on the " 'likely practice of the insurance company' "—" '[t]he test is the effect which truthful answers would have had *upon the insurer.*' " (*Ibid.*, italics added.) The senior underwriter's testimony regarding St. Paul's practices for insuring joint ventures sufficiently shows the material effect that truthful answers about the joint venture would have had upon St. Paul.

Plaintiffs also contend the misstatements were immaterial because St. Paul issued the policy *before* it received the application. No doubt every insurer wishes it possessed such clairvoyance. The record, however, debunks plaintiffs' claim. The broker submitted the application on July 27, 2001. He indicated on the application a proposed effective date for the policy of July 24, 2001. St. Paul processed the application on September 27, 2001, with an effective date of July 25, 2001. Giving a retroactive effective date to a policy "wouldn't be unusual" in the insurance industry, as the broker testified. The retroactive effective date does not show St. Paul read plaintiffs' minds.

Plaintiffs further claim St. Paul could not rescind the policy because the misrepresentations were unintentional. Not so, according to the Insurance Code, case law, and leading commentary. "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." (§ 331.) "Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance . . . ." (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 469 [25

---

[3] It is undisputed that the broker submitted the application to St. Paul. Plaintiffs note the application was not signed, but that does not make the misrepresentations any less material. Nor are the misrepresentations immaterial because some parts of the application were incomplete.

Cal.Rptr.3d 627], citations omitted (*Mitchell*).) "Therefore, misstatement or concealment of 'material' facts is ground for rescission *even if unintentional.* The insurer need not prove that the applicant-insured actually intended to deceive the insurer." (Croskey et al., *supra*, ¶ 5:169, p. 5-36.9.)

Plaintiffs misplace their reliance on *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261 [134 Cal.Rptr. 427]. They cite the case for the proposition that insurers may rescind policies when policyholders commit acts or omissions " 'which are fraudulent in their nature.' " (*Id.* at p. 275.) Plaintiffs assert this requires a rescinding insurer to prove the policyholder had an actual intent to defraud. Not so. The *Williamson* court could not and did not rewrite section 331. The case uses the term "fraudulent" loosely in its discussion of whether the insurer could assert rescission as an affirmative defense. (64 Cal.App.3d at pp. 273–275.) It does not question whether an unintentional misrepresentation justifies rescission. Indeed, the case embraces the trial court's finding, " '[the insureds'] failure to disclose this information constituted misrepresentation and concealment of material facts, whether the non-disclosure was intentional or unintentional.' " (*Id.* at p. 271.)

Plaintiffs similarly misplace their reliance on the language of the policy. The policy provides, "[u]nintentional errors or omissions won't affect your rights under this policy." This language appears in the policy, not the application. It applies to statements made *after* the policy has been issued, not statements made to obtain the policy. (See *Mitchell*, *supra*, 127 Cal.App.4th 457 at p. 473 [§ 331, allowing rescission for intentional or unintentional concealment, applies to statements made when applying for insurance; contract language allowing insurer to void policy for willful misrepresentation applied to statements made when filing claim].) *"Unlike* rescission for misrepresentations in an insurance application, rescission for false claims requires a fraudulent intent . . . ." (Croskey et al., *supra*, ¶ 5:252, p. 5-52.7, italics added.) In this case involving rescission for misrepresentations in the application, St. Paul did not need to show the misrepresentations were intentional.[4] (Croskey et al., *supra*, ¶ 5:169, pp. 5-36.9 to 5-36.10; *Mitchell*, *supra*, 127 Cal.App.4th at p. 469; § 331.)

 Finally, plaintiffs contend St. Paul waived its right to rescission by accepting the defense of the Hollywood Sound litigation. " 'Waiver is the intentional relinquishment of a known right. [Citations.] An insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations.' " (*Mitchell*, *supra*, 127

---

[4] In their reply brief, plaintiffs cite *Clarendon Nat. Ins. v. Insurance Co. of the West* (E.D.Cal. 2006) 442 F.Supp.2d 914. *Clarendon*'s rescission analysis is unpersuasive and not binding on us.

Cal.App.4th at p. 476.) Also, "an insurer has the right to rely on the insured's answers to questions in the insurance application without verifying their accuracy." (*Id.* at p. 477.) St. Paul was entitled to rely on the misstatements in the application when it accepted the defense of the Hollywood Sound litigation. For the same reason, St. Paul is not estopped from rescinding the policy. (*Wolitarsky v. Blue Cross of California* (1997) 53 Cal.App.4th 338, 345 [61 Cal.Rptr.2d 629] [estoppel requires that " 'the party estopped must know the facts' "].) Moreover, St. Paul accepted the defense pursuant to a reservation of rights, including its right to "deny coverage" and "recover amounts paid if it is later determined that there is no coverage."

■ For all these reasons, we conclude St. Paul properly rescinded the policy. Thus, plaintiffs *never* had any coverage under it, and St. Paul *never* had a duty to defend or indemnify them. This resolves plaintiffs' contentions that St. Paul failed to provide a full defense to all plaintiffs, wrongly withdrew from the litigation after settling the claims against LA Sound, and failed to indemnify Hsu and Ji for their settlement costs. Accordingly, we need not determine whether the court wrongly admitted evidence on these issues, or whether the jury was properly instructed on them. The court properly determined the St. Paul policy was rescinded.

*Hsu and Ji Are Not Jointly Liable for Reimbursing St. Paul*

Hsu and Ji assert that even if the policy was rescinded, they nevertheless are not individually liable to St. Paul for reimbursing any policy benefits without a showing they were alter egos of the corporation. In response, St. Paul asserts Hsu and Ji are liable for reimbursement because they individually benefited from the defense it provided. We conclude that while St. Paul was entitled to recover policy benefits it conferred on Hsu and Ji, the court wrongly held Hsu and Ji jointly liable with LA Sound for the entire amount of reimbursement. St. Paul failed to establish the amount of benefits conferred separately on each insured.

■ The parties share their reliance on *Buss v. Superior Court* (1997) 16 Cal.4th 35 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*). *Buss* provides that when policyholders face a "mixed" action—one asserting claims potentially covered by the policy and claims not even potentially covered—insurers must defend the entire action, subject to later reimbursement for defense costs attributed solely to any claims that were not potentially covered. (*Id.* at pp. 48–49, 53.) The right to reimbursement is implied in law—"under the law of restitution such a right runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby." (*Id.* at p. 51.) Insurers seeking reimbursement, however, bear the burden of proving the proper amount of reimbursement. (*Id.* at p. 53.) "An insurer may obtain

reimbursement *only* for defense costs that can be allocated *solely* to the claims that are not even potentially covered. To do that, it must carry the burden of proof as to these costs by a preponderance of the evidence. And to do *that* . . . it must accomplish a task that, 'if ever feasible,' may be 'extremely difficult.' " (*Id.* at pp. 57–58.)

There is a key distinction between this case and *Buss*; reimbursement here is required by rescission. "[A] rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage . . . ." (*Imperial Casualty, supra*, 198 Cal.App.3d at p. 182.) "The rescission shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise." (§ 650.) Unlike a *Buss* mixed action, in this case St. Paul's duty to defend was nonexistent from the inception. And it is on this basis that St. Paul is entitled to restoration of benefits paid.

Nonetheless, the parties wrongly try to tie Hsu and Ji's liability for reimbursing St. Paul to the "capacities" in which they were sued in the underlying litigation. The policy covered Hsu and Ji "only for the conduct of their duties as [LA Sound] directors or executive officers," not for any conduct outside the scope of the corporate duties. And Hollywood Sound had alleged Hsu and Ji were liable for their conduct both within and outside the scope of their duties as LA Sound representatives.

But determining the capacities in which Hsu and Ji were sued is beside the point. The policy was rescinded—thereby rendering all amounts advanced under the policy subject to reimbursement without regard to the "capacity" for which the funds were advanced. To whatever extent St. Paul defended or indemnified them, Hsu and Ji received policy benefits to which they were not entitled. Holding them liable for reimbursing costs spent defending and indemnifying them is consistent with *Buss* and its observation that the right to reimbursement "runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby." (*Buss, supra*, 16 Cal.4th at p. 51.)

 But it does not follow that all three insureds should be jointly liable for reimbursing the entire amount of those costs. That would be inconsistent with *Buss*, which places the burden of proof on insurers seeking reimbursement. (*Buss, supra*, 16 Cal.4th at p. 53 [citing Evid. Code, § 500].) In the "mixed action" context, insurers must show by a preponderance of the evidence which defense costs can be allocated solely to claims that are not even potentially covered. (*Buss*, at pp. 57–58.) In the rescission context, insurers seeking reimbursement must bear the analogous burden of showing

which costs can be allocated to the defense or indemnity of each particular insured. "It is the purpose of rescission . . . 'to bring about substantial justice by adjusting the equities between the parties' . . . ." (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316 [85 Cal.Rptr. 138, 466 P.2d 682]; accord, Civ. Code, § 1692.) It would be inequitable to require a party insured under a rescinded policy to reimburse the insurer the policy benefits it received *and also* all policy benefits that every other insured party received. The right to reimbursement may "run[] against the person who benefits from 'unjust enrichment' " (*Buss, supra,* 16 Cal.4th at p. 51), but it should do so only to the extent the person *actually benefits.*

St. Paul, as an insurer seeking reimbursement, bore the burden of allocating its defense and indemnity costs among LA Sound, Hsu, and Ji. St. Paul did not prove any such allocation. And in the absence of proof, we decline to assume that every dollar St. Paul spent on the underlying action benefited all three insureds. Whether this is true depends on a detailed analysis of how the defense costs were spent—did any discovery or motion practice benefit one insured alone, or did all litigation costs benefit all insureds equally? It also depends on a detailed analysis of how the indemnity costs were spent—did the insureds face the same amount of liability, and was their liability settled on identical terms? Not only must St. Paul parse through the underlying litigation to allocate policy benefits between LA Sound on the one hand and Hsu and Ji on the other, it must allocate benefits between Hsu and Ji. It is implausible, though not impossible, that the two individuals faced the *exact* same liability based on the *exact* same conduct and were defended in the *exact* same way. Why should they incur the *exact* same reimbursement obligation?

We recognize that St. Paul's burden is heavy. But it is no heavier than the burden *Buss* imposes on insurers seeking reimbursement in mixed actions; *Buss* concedes this task, " 'if ever feasible,' may be 'extremely difficult' " for insurers. (*Buss, supra,* 16 Cal.4th at p. 58.) And it is placed on the party best able to bear it. Insurers that pay defense and indemnity costs are in the best position to monitor the underlying litigation, track expenses, and allocate policy benefits among insureds. The alternatives would be to require every insured under a rescinded policy to reimburse all costs spent defending or indemnifying all other insureds, or to impose upon an insured defending a reimbursement claim the burden of allocating defense and indemnity costs among itself and all other insureds. The first alternative defeats the equitable purpose of restitution. The second alternative inverts the burden of proof, which *Buss* and Evidence Code section 500 place squarely on insurers asserting claims for reimbursement.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The matter is remanded to the trial court for a new trial on St. Paul's cross-complaint, limited to the issue of the amount owed by LA Sound, Hsu, and Ji as restitution of the respective benefits received by each under the rescinded insurance policy. In all other respects, the judgment is affirmed.

In the interests of justice, each party shall bear its own costs on appeal.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied December 10, 2007, and appellants' petition for review by the Supreme Court was denied February 27, 2008, S159342. George, C. J., and Corrigan, J., did not participate therein.