Filed 2/3/14  Lopez v. Allstate Ins. Co. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MILTON LOPEZ et al., <br><br> Plaintiffs, Cross-defendants and Appellants, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br> Defendant, Cross-complainant and Appellant. | F065514 <br><br> (Super. Ct. No. 10CECG01035) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Judge.

Lang, Richert & Patch, William T. McLaughlin II and Ashley N. Emerzian for Plaintiffs, Cross-defendants and Appellants.

MacGregor & Berthel, Gregory Michael MacGregor, Deborah A. Berthel and Joshua N. Willis for Defendant, Cross-complainant and Appellant.

-ooOoo-

Plaintiff Milton Lopez, purchased insurance from defendant Allstate Insurance Company (Allstate), for his rental property, a single family residence on West Robinson Avenue in Fresno (the house). In the insurance applications, Lopez represented that the house was 1,600 square feet with eight rooms, that it contained "1" "Apts./Family Units," and that the "[t]otal number of residents in household including children" was "1." However, the house was in fact over 3,000 square feet, contained eight bedrooms and five bathrooms, and six of the bedrooms were rented to individual tenants.

After the house was destroyed by a fire, Allstate denied Lopez's claim. Lopez and his ex-wife, plaintiff Anamaria Cornejo, filed the underlying complaint against Allstate alleging breach of contract. Thereafter, Allstate rescinded the policy due to misrepresentations made by Lopez during the application process. Allstate further argued there was no coverage in any event because the policy limited coverage to a "one-, two-, three- or four-family building structure" and this property contained more than four rental units. Along with its answer, Allstate filed a cross-complaint against plaintiffs for rescission.

The jury returned a verdict in favor of Allstate. The jury found that Lopez made material misrepresentations in applying for the policy and therefore the policy was void from its inception. The trial court had previously granted summary judgment in favor of Allstate as to Cornejo's claims because Cornejo was not a named insured on the policy.

Plaintiffs contend the trial court erred when it failed to interpret the unambiguous insurance policy and instead gave the coverage question to the jury. Plaintiffs further argue that their loss was covered because rented bedrooms are not "dwellings" as defined in the policy. Additionally, Cornejo asserts that the court erred in summarily adjudicating her claim against Allstate because, while her name does not appear on the policy, there is a triable issue of material fact as to whether she can sue based on the conduct of Allstate's agent.

2.

Contrary to plaintiffs' position, the jury did not decide the coverage issue. Rather, the jury found that Lopez made material misrepresentations regarding the size of the house and/or the number of residents and that the policy was therefore void. Substantial evidence supports this factual finding. Further, even if a contract had been formed, there is no coverage under the plain language of the policy. The "dwelling" was more than a "four-family building structure" because the house was divided into six units that were rented to more than four unrelated individuals. In light of this conclusion, the issue of whether Cornejo had standing to sue Allstate is moot. Accordingly, the judgment will be affirmed.

## BACKGROUND

Plaintiffs bought the house in February 2004. In March 2004, Lopez went to Allstate agent Gary Gonzales to purchase homeowner's insurance. The insurance application, signed by Lopez, states the house has eight rooms, the number of "Apts./Family Units" is "1" and the total number of residents in the household is "1." However, the house in fact had considerably more than eight rooms and, at that time, there were three tenants living in the house. This policy was cancelled after 30 days due to the house having had unmitigated prior losses.

In 2005, Lopez replaced the roof on the house. In October 2005, Lopez again contacted Allstate and requested a landlord's policy for the house. Lopez spoke with Sandra Rios, an agent in Gonzalez's office, over the telephone and gave Rios the necessary information. The application states the house has 1,600 square feet of total living area. In answer to number of apartments or family units, the application states "1."

Based on this application, Allstate issued a landlord's policy to Lopez providing a limit of $106,723 on the "Dwelling" and $10,672 on "Other Structures" for a total premium of $438. The policy rating was based on the house being of frame construction and occupied by one family. This policy was renewed annually. The policy provided that "'Dwelling' -- means a one-, two-, three- or four-family building structure which is used

3.

principally as a private residence and located at the address stated on the Policy Declarations." "'Building structure' -- means a structure with walls and a roof."

In July 2009, a fire destroyed the house. Cornejo reported the loss to Allstate and informed Allstate that the house had six tenants in "studio suites." Shortly thereafter, Lopez provided Allstate with the six separate lease agreements for the rented rooms. Each room had a lockable door, a table, a chair, a microwave and a refrigerator. The tenants shared bathrooms and did not have access to the kitchen. Allstate paid Lopez $13,800 for loss of rents.

Allstate inspected the house in order to ascertain the scope of repairs. The inspector noted both the multiple units and the discrepancy between the square footage insured and the actual size of the house. While the policy insured 1,600 square feet, the house was over 3,000 square feet. The estimate to repair the house was approximately $371,000 but the policy limit in effect at the time of the loss was $133,121 for the "Dwelling" and $13,312 for "Other Structures."

Upon further investigation, Allstate referred the claim to coverage counsel. On counsel's recommendation, Allstate rescinded the policy and declared it void on the ground that Lopez materially misrepresented the property to be insured in the application process. Allstate refunded $438 and $1,542 in premiums to Lopez.

Plaintiffs filed the underlying action against Allstate alleging Allstate breached the landlord's policy by denying plaintiffs' fire loss claim. Plaintiffs sought damages and reformation. Allstate filed a cross-complaint for rescission and declaratory relief. Allstate also asserted rescission as an affirmative defense.

Both sides moved for summary judgment or summary adjudication of issues. The trial court denied plaintiffs' motion. The trial court granted Allstate's motion as to

4.

Cornejo. The court concluded Cornejo did not have standing to prosecute the action because she was not named on the policy.[1]

The case was tried to a jury. The jury returned a verdict in Allstate's favor finding that Lopez made "material misrepresentations or conceal[ed] material facts in the application for insurance with Allstate Insurance Company such that the Landlord's insurance policy was void from its inception."

## DISCUSSION

**1.** ***The trial court did not submit a coverage question to the jury.***

Plaintiffs argue that the policy, when interpreted correctly under the plain meaning rule, provides coverage for their loss. According to plaintiffs, the trial court erred when it did not interpret the policy itself but, rather, submitted the coverage question to the jury. Plaintiffs assert that the jury could not have made its finding that Lopez committed fraud with respect to the number of rented bedrooms in the house without first interpreting the policy.

Plaintiffs correctly note that the interpretation of an insurance contract is a question of law that is reviewed de novo on appeal. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470.) However, contrary to plaintiffs' position, the jury was not asked to interpret the policy. Regarding Allstate's claim that no insurance contract was created because Lopez made a false representation in his application for insurance, the jury was instructed:

> "… To establish this claim, Allstate Insurance Company must prove all of the following. One, that Milton Lopez submitted an application for insurance with the Allstate Insurance Company. Two, that in the application for insurance Milton Lopez intentionally represented the

---

[1] Allstate has filed a cross-appeal challenging the trial court's denial of its motion for summary adjudication on the coverage issue. In light of our disposition, this issue is moot.

5.

*number of residents and/or the size of the dwelling.* Three, that Milton Lopez knew that this … representation was not true. Four, that Allstate Insurance Company would not have issued the insurance policy if Milton Lopez had stated the true facts in the application. Five, that Allstate Insurance Company gave Milton Lopez notice that it was rescinding the insurance policy. And six, that Allstate Insurance Company returned the insurance premiums paid by Milton Lopez." (Italics added.)

The jury returned its verdict in favor of Allstate answering "Yes" to the question "Did Milton Lopez make material misrepresentations or conceal material facts in the application for insurance with Allstate Insurance Company such that the Landlord's insurance policy was void from its inception?" Reading the jury instructions and the verdict together, the jury found that Lopez misrepresented "the number of residents and/or the size of the dwelling" in the insurance application.

In making this finding, the jury was not required to interpret the policy. The jury's conclusion that Lopez made material misrepresentations or concealed material facts regarding the size of the house and the number of residents was not dependent on the jury determining whether the house was more than a "four-family building structure" and therefore not covered by the policy. Rather, the jury merely found that Lopez understated the size of the house and/or the number of people who would be living there and, because of these misrepresentations, a contract was never formed. For this purpose, the policy language was irrelevant.

Moreover, the record supports the jury's finding. Lopez understated the size of the house on more than one occasion. In applying for insurance immediately after the purchase, Lopez stated the house had eight rooms when it in fact had eight bedrooms. The second insurance application and the policy declarations that were sent to Lopez each time the policy was renewed stated the house was 1,600 square feet. However, the house had over 3,000 square feet of living area. Lopez also understated the number of people living in the house. In the initial application, Lopez stated there would be one resident when there were at least three tenants in the house. Later, Lopez claimed the

6.

house had one apartment/family unit while there were six unrelated individuals living there.

The policy provided that it was "void if it was obtained by misrepresentation, fraud or concealment of material facts." Further, under California law, the insurer is entitled to rescind a policy when a policy holder conceals or misrepresents a material fact on the insurance application. (*LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1266 (*LA Sound*).) Such a "'rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable.'" (*Id*. at p. 1267.)

Whether misrepresentations are material is determined solely by the probable and reasonable effect that truthful answers would have had on the insurer. (*LA Sound, supra,* 156 Cal.App.4th at p. 1268.) However, the fact that the insurer has demanded answers to specific questions in an insurance application is itself usually sufficient to establish materiality as a matter of law. (*Ibid*.) Further, such misrepresentation or concealment need not be intentional to be a ground for rescission. (*Id*. at p. 1270.)

Here, Allstate specifically requested the square footage of the house and the number of "family units" it contained. The fact that Allstate asked these questions supports the jury's finding that the misrepresentations regarding these facts were material. Further, common sense dictates that the size of the residence and the number of families living there are important factors with regard to how, or if, a policy is written and what premium is charged.

In sum, the jury was not interpreting the policy when it found that the policy was void from its inception based on Lopez's material misrepresentations. Moreover, the record supports the jury's finding.

2.    ***Even assuming a contract was formed, the policy did not cover the loss.***

Coverage A in the landlord's policy covers "sudden and accidental direct physical loss" to the insured's "dwelling" with various exclusions. "'Dwelling'" is defined as "a

7.

one-, two-, three-, or four-family building structure which is used principally as a private residence and located at the address stated on the Policy Declarations." A "'Building structure'" is simply "a structure with walls and a roof." Thus, a covered "dwelling" is a single structure with walls and a roof that can accommodate up to four families.

In addition to the dwelling, the policy's coverage D insures lost rental income when a covered loss to the dwelling makes a "rental unit" uninhabitable. "'Rental Unit'" is defined as "that portion of your dwelling which forms separate living space intended for tenant occupancy."

Plaintiffs argue that the insuring language is unambiguous and that this language cannot be interpreted to impose a limit on the number of rented bedrooms. According to plaintiffs, "the term 'dwelling' cannot be construed to be synonymous or interchangeable with the term 'rental unit' or the word 'bedroom.'" Plaintiffs assert no one would reasonably understand the terms "dwelling" and "rental unit" to share the same meaning. Accordingly, plaintiffs read coverage A as containing a limit on the number of insurable "dwellings" but not the number of rented bedrooms.

When determining whether a particular policy provides coverage, the court must first look to the contract language in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) The fundamental rules the court follows in interpreting contracts are premised on giving effect to the "'mutual intention' of the parties,'" to be inferred, if possible, solely from the contract's written provisions. Such judicial interpretation is controlled by the "'"clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage …."'" (*Ibid.*) Moreover, the construction of the language must be both reasonable and in the context of the instrument as a whole. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 867.)

In the context of the landlord's policy, "dwelling" is singular. The policy covers one dwelling, i.e., a structure with walls and a roof that may accommodate up to four "families." Plaintiffs are correct that "dwelling" is not interchangeable with "rental unit" or bedroom. The "dwelling" is the whole that consists of up to four separate living spaces for tenant occupancy. Thus, the policy does not cover up to four "dwellings" as claimed by plaintiffs. Rather, it covers one dwelling that may contain as many as four family units.

In its ordinary and popular sense, "family" means a group of people who form a household. Thus, under the policy, a reasonable construction of a "four-family building structure" is a building that includes four separate living spaces intended for occupancy by four separate households. In other words, reading the policy as a whole, a dwelling is a structure with walls and a roof that can contain up to four "rental units."

Here, plaintiffs' house had six separate living spaces intended for six unrelated tenants. Each bedroom had its own lock and each tenant had his or her own lease. Although the term "family" generally connotes more than one person, it is unreasonable to construe the policy as covering more than four separate living spaces as long as those separate spaces are occupied by only one tenant. Moreover, while it might have been cramped, the rented bedrooms could have accommodated more than one person. Thus, each separate living space must be considered a family unit. The fact that the six tenants shared five bathrooms does not cause these private living spaces to be anything other than family units. The bedrooms, as modified and furnished, formed separate living spaces intended for tenant occupancy. Accordingly, because the house was not a one, two, three or four family building structure, the landlord's policy did not cover the loss.

In light of this conclusion, the issue of whether Cornejo was improperly dismissed from the action is moot.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendant Allstate Insurance Company.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

KANE, J.


_____

FRANSON, J.

10.