Filed 2/24/14  De La Torre v. Century Surety Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PABLO DE LA TORRE et al.,<br><br>    Plaintiffs, Cross-Defendants and Respondents,<br><br>    v.<br><br>CENTURY SURETY COMPANY,<br><br>    Defendant, Cross-Complainant and Appellant,<br><br>DOUGLAS W. MOTZ et al.,<br><br>    Defendants, Cross-Defendants and Appellants,<br><br>PACIFIC INSPECTION, INC.,<br><br>    Cross-Defendant, Cross-Complainant and Appellant. | D061028<br><br><br>(Super. Ct. No. 37-2008-00081030-CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa Foster, Judge.  Reversed in part, affirmed in part and remanded with directions.

SNR Denton US, Paul E. B. Glad, David R. Simonton; Woolls & Peer, H. Douglas Galt and Jeffrey Dollinger for Defendant, Cross-Complainant and Appellant Century Surety Company.

Skane Wilcox, Elizabeth A. Skane and Kent H. Thaeler for Defendants, Cross-Defendants and Appellants Douglas W. Motz Insurance Agency, Inc. and Douglas W. Motz.

Horvitz & Levy, H. Thomas Watson, Dean A. Bochner; Hewitt & Truszkowski, Stephen L. Hewitt and Kevin C. Almeter for Cross-Defendant, Cross-Complainant and Appellant Pacific Inspections, Inc.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Law Office of Robert Hamparyan, and Robert Hamparyan for Plaintiffs, Cross-Defendants and Respondents.

INTRODUCTION

Century Surety Company (Century) appeals a judgment for breach of contract and bad faith based upon Century's denial of insurance benefits to Jalisco Restaurant (Jalisco) for a property loss sustained after a fire broke out in a back kitchen when a pot of oil was left unattended over an open flame burner. Century denied the claim stating the policy did not apply because Jalisco did not have an automatic fire extinguishing system over the back cooking area, as required by the terms and conditions of the policy. Century explained that Jalisco had represented in its supplemental questionnaire application that it had a "UL approved auto-extinguishing system over ALL cooking surfaces and deep fryers" and that the policy's protective safeguards endorsement required Jalisco to have a

2

"fully functional and actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source."

Century argues on appeal (1) that the trial court erred in ruling Century was required to prove Jalisco made intentional misrepresentations on the insurance application to prevail on its affirmative defense based upon the statutory right to rescind and (2) that the court erred in ruling the protective safeguards endorsement was unenforceable because it was not conspicuous, plain and clear.  We agree and reverse.

It is well settled that material misstatements or concealment of material facts in an application for insurance, even if unintentional, entitle an insurer to rescind the insurance policy.  (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 468-469 (*Mitchell*); Ins. Code, §§ 331, 359.)[1]  The insurer must prove that the insured made a material "false representation" in the application.  "A representation is false when the facts fail to correspond with its assertions or stipulations."  (§ 358.)

The jury in this case found that Jalisco's broker, Doug Motz (Motz), made negligent material misrepresentations in the application for insurance.  However, the trial court ruled that Century's policy language constrained the statutory right to rescind and required Century to show that Jalisco made an intentional misrepresentation to establish its affirmative defense.  This was error.

Policy language stating coverage is void for willful or intentional misrepresentations does not diminish the statutory obligation for a potential insured to disclose all material facts in the application process.  (§ 336; Crosky et al., Cal. Practice

---

[1]    All further statutory references are to the Insurance Code unless otherwise noted.

3

Guide: Insurance Litigation (The Rutter Group 2013) ¶ 5:169.5, p. 5-43.) Such policy language "applies to statements made *after* the policy has been issued, not statements made to obtain the policy." (*L.A. Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1270 (*L.A. Sound*), original italics.) Because Century established that Jalisco, through its broker, misrepresented material facts in the application, Century established a complete defense to Jalisco's claim and Century is entitled to judgment.

The court also erred in determining that the protective safeguards endorsement was unenforceable because it was not "conspicuous, plain, and clear." Based upon the facts of this case, we hold that the protective safeguards endorsement is sufficiently conspicuous, plain and clear to be enforceable as a matter of law and that Jalisco was provided adequate notice through the application, the quotation and the binder that it was required to have the protective safeguard of an automatic fire extinguishing system over *all* cooking surfaces. Because Jalisco failed to maintain an automatic fire extinguishing system over its back kitchen as required, coverage is precluded. (*American Way Cellular, Inc. v. Travelers Property Casualty Co. of America* (2013) 216 Cal.App.4th 1040, 1054-1056 (*American Way*).)

We reverse the judgment with directions for the trial court to enter judgment in favor of Century as to plaintiffs' causes of action and to conduct further proceedings. Because we reverse the judgment, including the award of contract damages to plaintiffs from Century, the trial court shall consider on remand what, if any, issues remain to be

4

decided regarding Century's cross-complaint against Pacific. As such, we do not reach Pacific's conditional cross-appeal.

With respect to Motz's appeal, we affirm the award of attorney fees to Century. Century is entitled to attorney fees based upon the tort of another doctrine as damages flowing from its negligent misrepresentation cause of action against Motz. Given our holding herein, we reverse the award of fees to plaintiffs and remand for further proceedings to determine if plaintiffs are entitled to fees from Motz.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Jalisco Restaurant*

Jalisco Restaurant is a family owned Mexican restaurant in Coachella, California. Jose Luis Garcia (Garcia) along with his wife Alicia Garcia and Garcia's uncle Pablo and aunt Genoveva De La Torre (collectively plaintiffs), are general partners who have owned the building and operated the restaurant since the 1980's. The restaurant has a front kitchen with an automatic fire suppression system over the cooktop, which plaintiffs updated.

After purchasing the building in 1986, plaintiffs installed a "prep kitchen" in the back with open flame burners, which they used through 2007 for preparing large volumes of food in pots with capacity of 24 to 100 quarts. Plaintiffs would cook meat and other food in this back area to be used in the front kitchen. The meat wholesaler who delivered meat products to Jalisco testified that they were always cooking in the back area. When the wholesaler delivered products, they would often put meat right into the pots. The

person who serviced the fire extinguishers and the fire suppression system in the front kitchen observed regular use of the stoves in the back in the mornings.

However, the back kitchen did not have a fire suppression unit and plaintiffs did not take steps to determine what was required for fire protection in this back kitchen area. According to Garcia, plaintiffs did not install a fire suppression system in the back kitchen "because it was a prep kitchen only."

*B.  Policy Applications*

Garcia contacted Motz in 2002 to obtain a comparison quote for insurance.  Motz visited the restaurant and saw the back cooking area, which Garcia told him was used as a prep kitchen.  Motz placed policies for Jalisco with various insurance companies for policy years 2002 through 2004.

Jalisco applied for and obtained insurance from Century from 2005 through 2007.[2]  Surplus lines policies, such as the ones issued by Century, are not automatically renewed.  Each year the insured's broker must prepare a new application, which the underwriter uses to rate the policy, and there is a new quote, a new binder and ultimately a new policy.

Each year, as part of the application process, Jalisco submitted a supplemental questionnaire for restaurants, which Century required for all commercial restaurant applicants.

---

[2]     As a "surplus lines" carrier, Century received Jalisco's application through a licensed surplus lines broker and underwriter, Monarch E&S Insurance Services.  The trial court instructed the jury that Monarch was Century's agent acting within the scope of its authority.

Jalisco's agent, Motz, would pre-prepare the application and supplemental questionnaire forms. An assistant in Motz's office who spoke Spanish would obtain information from Garcia or his accountant and would discuss the coverage and the forms with him when he came in to sign the paperwork each year. Motz's assistant would translate questions on the forms to Spanish. Garcia understood that when he signed these forms he was representing the information in the form was true. However, Garcia denied that anyone went over the supplemental questionnaire with him.

The supplemental questionnaire included a section entitled "Cooking Hazard Questionnaire" that asked the applicant to respond yes or no to the question, "UL approved auto extinguishing system over ALL cooking surfaces and deep fryers?" Jalisco answered this question "yes" every year.[3]

Unknown to Century, these representations were false because there was no automatic extinguishing system over the back cooking area. Century would not have covered a commercial restaurant with a cooking area that lacked an automatic fire suppression system.

### C. 2007 Policy

For the 2007 policy, Century's quote included a "warrant" that Jalisco had a "fully functional [and] actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source with a semi-annual service contract." This

---

[3]    In 2007, Jalisco's agent, Motz, photocopied the 2006 questionnaire, whited out certain portions and filled them out himself. Garcia denied signing the questionnaire in 2007. After first testifying that Garcia signed the 2007 questionnaire in Motz's office, Motz admitted during trial that Garcia did not sign this document. A document examiner concluded that the 2007 questionnaire was an altered copy of the 2006 questionnaire. On the second page, the only difference is the date.

required Jalisco to make a commitment or representation that all cooking areas were covered with an operational fire suppression system. After Jalisco accepted the quote, a binder was issued binding the coverage, meaning that an insurance contract existed and the full policy would be sent. The 2007 binder restated the warrant requirement for automatic fire suppression over all cooking areas. Motz understood that both the quote and the binder "state[d] very clearly that all cooking areas must have an automatic fire extinguishing system installed with an automatic shutoff" and that "failure to comply with the condition meant there [would be no] coverage." Motz testified this warrant requirement was reviewed with Garcia.

Century's 2007 policy included a one-page protective safeguards endorsement, which stated, "[a]s a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above." The schedule used the same language as that set forth on the quotation and binder, which required Jalisco to maintain a "fully functional and actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source with a semi-annual service contract."

Garcia received a copy of the 2007 insurance policy and understood it was an important legal document.

### D. Pacific Inspections

An underwriter, such as Monarch, typically orders an inspection of insured property after it has quoted and bound a policy to evaluate the risk and to verify the information on the application that was used to underwrite the account. Insurance

8

companies, such as Century, rely on inspections to determine whether to continue coverage or to maintain a policy in place.

In July 2004 Pacific Inspections, Inc. was asked to inspect the restaurant.[4] Pacific was asked to determine if "the risk . . . [was] a good one and if it isn't, what recommendations can be made to make the risk a safe one." The inspector was to confirm that an automatic fire extinguishing system covered "all cooking equipment" and to complete a checklist identifying any equipment "not protected by the automatic fire extinguishing system." Pacific was given special instructions to verify whether an Ansul system—an automatic fire suppression system—was needed over the cooking areas at Jalisco. Pacific understood it was to evaluate the risk and that the insurance company would rely on Pacific's report.

In 2004, Pacific's inspector, Raymond Bangs, walked around the restaurant taking measurements and photographs. He observed the front cooking area and "took a peek into the back area," but did not walk into or notice the rear kitchen. Bangs testified that he asked Pablo De La Torre, one of Jalisco's owners, where the cooking was done and was told that it was done only in the front kitchen. [5]

While the 2004 report noted the presence of an approved fire suppression system in Jalisco's front kitchen area, it did not mention the absence of an automatic fire

---

[4] Monarch requested this first inspection in connection with a prior policy issued by a different insurer.

[5] Motz similarly testified that, when he initially walked through the restaurant in 2002, Garcia told him it was a prep kitchen and all of the cooking was done in the front kitchen.

9

suppression system over the rear kitchen burners. Bangs acknowledged the insurer required any cooking area to be covered with a fire suppression unit. If an area was not covered, the suppression system must be extended to cover the cooking equipment or the equipment must be removed. A report from a restaurant that an area was not being used was not sufficient.

Bangs inspected the property again in 2005 for the Century policy. Again, he did not walk inside what he thought was a rear storage area and did not note the lack of an automatic fire suppression system over the rear kitchen burners.

Bangs did the same thing in 2007. The 2007 report notes there is a fully operational fire suppression system over the cooking area with an automatic shut off, which needed regular service. There is no mention of the rear cooking area.[6]

### E. The Fire

On the afternoon of December 14, 2007, De La Torre started a pot of oil over an the open flame burner in the back kitchen to refry beans. When he was called to the front, he left the pot unattended and it ignited. De La Torre used a portable fire extinguisher to put the fire out, but the flames were sucked into the hood by the exhaust fans and the fire spread through the ducting to the outside resulting in significant property damage.

---

[6] Garcia testified he told Bangs in 2007 to take a look in the back kitchen, which was not being used at that hour. A county fire inspector testified he was told in 2007 that Jalisco was not using the rear cooking area because they were slow. The inspector observed the gas line was not connected and boxes were stacked on the burners.

## F. The Claim

Motz reported the fire loss. When Century learned from Jalisco's public adjuster that there was a grease fire in the restaurant, it retained an independent adjusting firm to inspect the property. The independent adjuster reported that there were actually two cooking areas in the restaurant. The cooking area in the front of the restaurant had an automatic fire extinguishing system, but a stove in the back, where the fire occurred, did not have such a system.

Century reviewed the 2007 restaurant supplemental questionnaire along with Pacific's 2007 inspection report. Neither disclosed the existence of a back kitchen without an automatic fire extinguishing system.

Century denied coverage stating there is no coverage under the terms and conditions of the policy because there was no automatic fire extinguishing system in place in the rear cooking area at the time of the fire, as was required by the protective safeguards agreement. The denial letter also noted that Jalisco indicated in its supplemental questionnaire application of May 2007 that it had "a UL approved auto-extinguishing system over ALL cooking surfaces and deep fryers."

## G. The Action

Jalisco and the individual plaintiffs sued Century for breach of contract, breach of implied covenant of good faith and fair dealing, and negligence. They sued Motz for breach of fiduciary duty, negligence and interference with contract. Plaintiffs sued Pacific for negligence and interference with contract.

11

Century raised in its answer misrepresentation as affirmative defenses alleging, "there is no coverage for the claim asserted by Plaintiffs because Plaintiffs misrepresented the hazard to be insured" and plaintiffs "failed to disclose, concealed, or misrepresented facts known to them . . . in the insurance application which were material to the risk allegedly underwritten by Defendant Century Surety." Century asserted the policy should be rescinded *ab initio* because plaintiffs fraudulently induced Century Surety to issue the policy.

Century cross-complained against Motz for fraud and negligent misrepresentation. Century cross-complained against Pacific for negligence, equitable indemnification and breach of contract.

## *H. Rulings During Trial*

During trial, Century moved for nonsuit or judgment on the basis that misrepresentation bars plaintiffs' claims, as does the protective safeguards endorsement. Plaintiffs simultaneously moved to preclude Century from relying on the protective safeguards endorsement as a basis to deny coverage arguing that Century did not provide adequate notice of the protective safeguards endorsement and that it was not plain, clear and conspicuous. Plaintiffs also argued Century should be estopped from relying on the protective safeguards agreement.

### 1. Misrepresentation

With respect to Century's misrepresentation defense, the court determined that paragraph A of the commercial property conditions, which provides that the policy is void in the case of fraud, constrained Century's statutory right to rescind based upon

12

negligent misrepresentation and required Century to prove intentional misrepresentation.[7] In so ruling, the court relied upon a federal district court case, *Clarendon National Insurance Company v. Insurance Company of the West* (E.D. Cal. 2006) 442 F.Supp.2d 914 (*Clarendon*), and declined to apply authorities from California appellate courts, including *Mitchell, supra,* 127 Cal.App.4th 457.

The court instructed the jury that Century's defense was based upon intentional misrepresentation and required them to find that Garcia or Motz made intentional misrepresentations regarding the fire extinguishing system in the application for insurance if Century was to prevail on this defense.

2. Protective Safeguards Endorsement

The court granted plaintiffs' motion to preclude Century from relying on the protective safeguards endorsement as a defense determining that the endorsement was not enforceable because it was not "conspicuous, plain, and clear." The court also ruled that Century was estopped from relying on the protective safeguards endorsement because there was insufficient notice of a change to the policy.

The court instructed the jury that the court found Century could not rely on the endorsement as a basis for denying the claim because "the Protective Safeguards

---

[7] Paragraph A of the commercial property conditions reads as follows:
"A.  CONCEALMENT, MISREPRESENTATION OR FRAUD
This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
1.  This Coverage Part;
2.  The Covered Property;
3.  Your Interest in the Covered Property; or
4.  A claim under this Coverage Part."

Endorsement was not 'conspicuous, plain, and clear.' " Accordingly, the court instructed the jury that they could not rely on the endorsement to deny the breach of contract claim against Century Surety Company, but they could consider the endorsement in connection with the bad faith claim against Century.

## I. Jury Verdicts

The jury returned several verdict forms. The jury found that Jalisco suffered a loss covered under Century's policy and that Century did not establish intentional misrepresentation in the application for insurance. As a result, the jury awarded plaintiffs $382,497.99 as the amount of the covered loss that Century owed to plaintiffs under the policy. The jury also found that Century's denial of benefits was unreasonable and that Century acted with "malice, oppression, or fraud." It awarded Jalisco punitive damages of $1,500,000.

On Century's cross-complaint against Motz for negligent misrepresentation, the jury found Motz made a false representation of an important fact to Century, Motz had no reasonable grounds for believing the representation was true when he made it, Motz intended Century to rely on the representation and Century's reliance on the representation was a substantial factor in causing harm to Century. It awarded Century $38,249 in damages against Motz as a portion of the contract benefits owed to plaintiffs.

The jury found for Century on its breach of contract claim against Pacific and awarded Century $2,524 in damages against Pacific, again as a portion of the contract benefits owed to plaintiffs.

14

As to plaintiffs' causes of action against Motz, the jury found Motz was negligent and that his conduct was a substantial factor in causing their harm. The jury also found, however, that plaintiffs were comparatively negligent in causing their own harm and assigned 75 percent liability to Motz and 25 percent liability to plaintiffs. The jury awarded plaintiffs $22,871 as damages for uncovered business income against Motz.

The jury also awarded damages against Motz for insurance benefits. On verdict form No. 6, the jury answered question 2 in part II, "Did the jury answer yes to Questions 4 or 7 on Special Verdict Form No. 3 - Plaintiffs v. Douglas W. Motz and Douglas W. Motz Insurance Agency? [¶] . . . [¶] If yes, what are plaintiffs' damages?" The jury entered a total of $382,497.99 against Motz for "Insurance Benefits," which is the same amount awarded against Century. The court determined, with the concurrence of the parties, that the amount of damages listed in response to this question was the result of a mistake or confusion on the jury's part because the verdict form instructed the jury to answer this question only if it had not awarded damages against Century on special verdict form No. 1, questions 6 or 7. Since the jury awarded identical damages against Century, the court entered judgment against Motz only for his portion of liability for uncovered business income.

*J. Judgment and Attorney Fees*

The court entered judgment on the jury verdicts and the court's decisions as follows: (1) for Jalisco against Century in the amount of $1,882,497.99, (2) for plaintiffs against Motz for $17,153.25 ($22,871 less 25 percent), (3) for Century against Pacific for $2,524, and (4) for Century against Motz for $38,249.

15

The court awarded plaintiffs attorney fees from Century based upon *Brandt v. Superior Court* (1985) 37 Cal.3d 813. The court also awarded plaintiffs attorney fees against Motz based upon the tort of another doctrine. The court awarded attorney fees to Century from Motz based upon the tort of another doctrine. The court denied Century's request for attorney fees from Pacific finding that attorney fees were not foreseeable in a breach of contract action.

### K. Motion for Judgment Notwithstanding the Verdict

Century moved for judgment notwithstanding the verdict arguing that the jury's finding of negligent misrepresentation by Motz defeats plaintiffs' breach of contract claim because, under binding California precedent, even innocent misrepresentations made in an insurance application entitles the insurer to rescind the policy or decline to pay a claim. Century also argued that it was entitled to judgment notwithstanding the verdict with regard to the bad faith and punitive damages claims because, as a matter of law, its denial of the claim could not be unreasonable because there was a genuine dispute as to the existence of coverage. The trial court denied Century's motion stating there was sufficient evidence to support the jury's finding that Century breached the covenant of good faith and fair dealing by failing to thoroughly and fairly investigate the Jalisco claim.

### L. The Appeals

Century appeals the judgment and the order denying its motion for judgment notwithstanding the verdict. Motz also appeals the judgment. Pacific filed a conditional

16

cross-appeal asking the court to order a complete new trial if damages against Pacific are found to be inadequate.

DISCUSSION

I

*CENTURY'S APPEAL*

A. Standard of Review

We independently review pure questions of law such as interpretation of a statute (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432), interpretation of a written instrument (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390) and the application of the law to undisputed facts (see *Dorel Industries Inc. v. Superior Court* (2005) 134 Cal.App.4th 1267, 1273 [even when a finder of fact makes factual determinations, which are reviewed for substantial evidence, the conclusions regarding the legal significance of the facts are reviewed independently]; *Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 717 [facts are "undisputed" if they are " 'settled' " or " 'not open to dispute or question' "]).

There is no dispute in this case that at the time Jalisco applied for insurance in 2007 it did not have an automated fire extinguishing system over the second kitchen in the rear of the restaurant. Additionally, the jury found that Jalisco's agent, Motz, made negligent material misrepresentations upon which Century relied to their detriment. Since neither plaintiffs nor Motz have challenged the jury's findings, we independently analyze the legal significance of these "undisputed" facts in light of the statutory requirements which govern the relationship between insured and insurer at the

17

application phase of formation of the insurance contract and in light of the policy language itself. These are questions of law "for which appellate courts are particularly well suited." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 213.)

## B. Misrepresentation Defense

Material misrepresentations or concealment of material facts in an application for insurance entitle an insurer to rescind an insurance policy, even if the misrepresentations are not intentional. (§§ 331 ["[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance"]; 359 ["[i]f a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false"]; *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 286-287; *Mitchell, supra,* 127 Cal.App.4th at pp. 467-468.)

These sections regarding the right to rescind based upon misrepresentations are part of the larger statutory framework of the Insurance Code, which "imposes 'heavy burdens of disclosure' 'upon both parties to a contract of insurance, and any material misrepresentation or the failure, whether intentional or unintentional to provide requested information permits rescission of the policy by the injured party.' " (*Mitchell, supra,* 127 Cal.App.4th at p. 468 quoting *Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 179-180; §§ 330-332, 334, 356, 358-360.)

"Rescission is not the insurer's sole remedy . . . . A misrepresentation or concealment of a material fact in an insurance application also establishes a complete defense in an action on the policy. [Citations.] As with rescission, an insurer seeking to

18

invalidate a policy based on a material misrepresentation or concealment as a defense need not show an intent to deceive. [Citations.]" (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 192 (*Superior Dispatch*).)

The insurer must prove that the insured made a material "false representation" in an insurance application. "A representation is false when the facts fail to correspond with its assertions or stipulations." (§ 358.) The test for materiality of the misrepresentation or concealment is the same as it is for rescission, "a misrepresentation or concealment is material if a truthful statement would have affected the insurer's underwriting decision." (*Superior Dispatch, supra,* 181 Cal.App.4th at pp. 191-192 citing *Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 & *Cohen v. Penn Mut. Life Ins. Co.* (1957) 48 Cal.2d 720, 725-726.)

Even if policy language limits an insurer's ability to *void* coverage to situations where there are intentional misrepresentations by the insured, such policy language does not limit the insurer's statutory right to *rescind* or to *defend* based upon negligent misrepresentations made in the application process to *obtain* the policy. (*L.A. Sound, supra,* 156 Cal.App.4th at p. 1270 [policy language applies to "statements made *after* the policy has been issued, not statements made to obtain the policy," original italics]; *Mitchell, supra,* 127 Cal.App.4th at p. 473 [§§ 331 and 359 "govern the parties' obligations during formation of the insurance contract" and allow an insurer to rescind or defend based upon an insured's negligent or unintentional concealment or misrepresentation of a material fact in the application process whereas fraud and concealment provisions requiring intentional conduct apply to claims for benefits]; see

19

also *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.* (N.D.Cal. 2005) 426 F.Supp.2d 1039, 1050 ["common sense dictates that [a clause], which is contained in the policy issued *after* the application has been approved, does not apply to misrepresentation or concealment in an insurance application"], original italics.)

"Such policy language does not change the insured's *statutory obligation* [under section 336] to disclose all material facts in the application." (Crosky, et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 5:169.5, p. 5-43; original italics.) As explained by the *Mitchell* court, "[f]reedom of contract and the right of an insurer to make an informed decision whether or not to insure a given risk are strong policy considerations that support more liberal rescission rights for misrepresentations made at the *inception* of the insurance contract." (*Mitchell, supra,* 127 Cal.App.4th at p. 472, italics added.) To hold otherwise would lead to an anomalous result in which an insurer could agree to undertake a risk without the ability to fully evaluate the risk. This does not advance the public policies of freedom of contract and the right of an insurer to make an informed decision about whether or not to insure a given risk. (*Ibid*.)

The trial court erred in declining to follow California precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [the doctrine of *stare decisis* requires superior courts to follow appellate court decisions, regardless of which district rendered the decision].) Instead, the court relied upon a nonbinding federal district court case, *Clarendon, supra,* 442 F.Supp.2d 914, to hold that Century's policy required proof that Jalisco made *intentional* misrepresentations in the insurance application process for Century to prevail on its affirmative defense. (*Howard Contracting, Inc. v. G.A.*

20

*MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 52 ["federal decisional authority is neither binding nor controlling in matters involving state law"].)

The analysis in *Clarendon, supra,* 442 F.Supp.2d 914, is not persuasive and we decline plaintiffs' invitation to adopt it. (*L.A. Sound, supra,* 156 Cal.App.4th at p. 1270, fn. 4.) *Clarendon's* attempt to distinguish *Mitchell* based upon the fact that *Mitchell* involved some statutory analysis is not compelling. *Mitchell* affirmed summary judgment on the ground that sections 331 and 359 provide an insurer with a broader right to *rescind* for either intentional or unintentional misrepresentations than standard policy language entitling an insurer to *void* a policy for willful or intentional concealment or misrepresentation. (*Mitchell, supra,* 127 Cal.App.4th at p. 470.)[8]

The *Mitchell* court did analyze sections 2070 and 2071 applicable to standard form fire insurance and determined they do not preclude rescission rights under sections 331 and 359. (*Mitchell, supra,* 127 Cal.App.4th at pp. 470-473.) However, while the

---

[8]     The standard form policy language involved in the *Mitchell* case is very similar to the policy language at issue in this case. In *Mitchell,* the standard form stated, "Concealment, fraud:  This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." (*Mitchell, supra,* 127 Cal.App.4th at p. 470.) To void a policy under this provision, " 'the false statement must have been knowingly and willfully made with the *intent* (express or implied) of deceiving the insurer.' " (*Ibid.*, italics added.) This is essentially the same as the clause at issue here, which allows Century to void the policy if the insured "intentionally conceal[s] or misrepresent[s] a material fact."
        The fact that the policy lists intentional misrepresentations related to a "claim" as one of four areas where conduct by an insured will void the policy does not mean that the other areas necessarily involve prepolicy conduct. Further, the plain language of the contract clause pertaining to the right to *void* coverage, does not indicate the parties intended to override the statutory right to *rescind* for material misrepresentations (intentional or unintentional) made during the application process.

21

standard form policy language involved in *Mitchell* is required by statute, *Mitchell* noted "there is no reason to treat fire insurance policies differently than other types of insurance policies" and " '[d]espite the significant statutory prescription of fire insurance policy terms, contracts of this kind are treated as voluntary contracts rather than legislative enactments, since they derive their force and efficacy from the consent of the parties.' [Citation.]" (*Id.* at p. 472.) *Mitchell* concluded that fraud and concealment provisions in a policy "requiring the insurer to prove a misrepresentation was willful in order to void the policy does not affect the application of Insurance Code section 331 and 349, allowing the insurer to rescind the policy in the event of a negligent or unintentional misrepresentation" and does not preclude an insurer from exercising its rights under those sections to rescind or defend based upon negligent or unintentional misrepresentations in an application for insurance. (*Mitchell, supra,* at p. 473.)

We also disagree with *Clarendon's* suggestion that *Mitchell, supra,* 127 Cal.App.4th 457 was wrongly decided based upon rules of statutory construction. (*Clarendon, supra,* 442 F.Supp.2d at p. 929.) "The rule that a specific statute prevails over a general one applies only if the two provisions cannot be reconciled. [Citation.] We must construe two statutes dealing with the same subject in a way that harmonizes them, avoids conflict, and avoids rendering any part of either statute surplusage, if feasible. [Citations.] 'If we can reasonably harmonize "[t]wo statutes dealing with the same subject," then we must give "concurrent effect" to both, "even though one is specific and the other general. [Citations.]" [Citation.]' [Citation.]" (*Superior Dispatch, supra,* 181 Cal.App.4th at p. 189.) *Mitchell, supra,* 127 Cal.App.4th 457, correctly

22

reconciled section 2071, which sets forth standard form fire insurance policy language, with sections 331 and 359, which deal with formation of insurance policies generally.

Further, when the Legislature amended section 2071 without change after *Mitchell, supra,* 127 Cal.App.4th 457 was decided, it presumptively agreed with *Mitchell*'s conclusion that the statutorily required standard form fire insurance language is inapplicable to the right to rescind based upon misrepresentations or concealments made before the policy was issued. (See Stats. 2005, ch. 397, § 1; *People v. Atkins* (2001) 25 Cal.4th 76, 89-90 [" 'When the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction.' "].)

Finally, we are not persuaded by *Clarendon*'s citation to authorities discussing the inability to imply statutory limitations on coverage without clear notice. (*Clarendon, supra,* 442 F.Supp.2d at pp. 929-930, citing e.g. *Utah Property & Casualty Ins. Etc. Assn. v. United Services Auto Assn.* (1991) 230 Cal.App.3d 1010, 1021 ["Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies."].) Sections 331 and 359 address the *formation* of the insurance contract; they are not limitations or exclusions on coverage provided by the policy. (*Mitchell, supra*, 127 Cal.App.4th at pp. 468, 471-472; see also *TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 760 [statutory right to rescind based upon material misrepresentations in the application process is not a limitation on coverage].) If a policy is rescinded, it is as though no insurance contract is formed and

23

there is no coverage at all. (*Imperial Casualty & Indemnity Co. v. Sogomonian, supra,* 198 Cal.App.3d at p. 184.)

From 2005 through 2007, Jalisco, through Motz, submitted supplemental questionnaires in connection with the policy applications representing that Jalisco had a "UL approved auto extinguishing system over ALL cooking surfaces and deep fryers." These representations were false.

The fact that Pacific conducted an inspection that did not disclose the misrepresentation does not change the analysis. The trial court denied Century's special jury instruction regarding its affirmative defense based upon negligent misrepresentation by stating that this does not apply where an inspection occurred. We conclude this was error.

"Waiver is the intentional relinquishment of a *known* right. [Citations.] An insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations." (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 824 (*Lunardi*), original italics.) The facts here are distinguishable from those in *Di Pasqua v. California Western States Life Ins. Co.* (1951) 106 Cal.App.2d 281, 284-285 where the appellate court determined that an insurer could not rely upon an insured's false statement when the insurance company had information *in its possession* indicating that the insured had provided false answers in an application for life insurance.

In this case, there is no legal or factual basis on which to conclude that Century knowingly waived the requirement for Jalisco to have and maintain an automatic fire

extinguishing system over *all* cooking surfaces when it had no information that Jalisco did not have a fire extinguishing system over the rear cooking area.  Jalisco did not disclose this information to either Century or to Pacific and Pacific did not discover this information in the inspection.  (*Lunardi, supra,* 37 Cal.App.4th at p. 825.)

Thus, the court erred in instructing the jury that Century was required to prove Jalisco made intentional misrepresentations to prevail on its affirmative defense.

Ordinarily, we would reverse for a new trial regarding the affirmative defense. However, a new trial is not necessary in this case because the jury made a factual finding, not challenged by any party on appeal, that Motz negligently misrepresented an important fact to Century, upon which Century reasonably relied to its detriment.  Since an insured is responsible for representations made by its insurance broker in an application for insurance (*L.A. Sound, supra,* 156 Cal.App.4th 1259, 1268), Century established a complete defense and is entitled to judgment as a matter of law.

### C.  Protective Safeguards Endorsement

We also hold that the trial court erred in declining to enforce the protective safeguards endorsement.  "Unquestionably, California insurers may rely on endorsements to modify printed terms of a form policy."  (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1208.)  " ' "If there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls."  [Citation.]' "  (*American Way, supra,* 216 Cal.App.4th 1040, 1057, quoting *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Ca1.4th 38, 50, fn. 4.)  However, "to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain

25

and clear.' " (*Haynes, supra,* at p. 1204.) " 'An exclusion in an adhesion contract of insurance must be expressed in words which are "plain and clear." This means more than the traditional requirement that contract terms be "unambiguous." Precision is not enough. Understandability is also required. To be effective in this context the exclusion must be couched in words which are part of the working vocabulary of average lay persons.' " (*Universal City Studios Credit Union v. CUMIS Ins. Society, Inc.* (2012) 208 Cal.App.4th 730, 741.)

The protective safeguards endorsement is in the nature of a condition precedent to coverage, not an exclusion from coverage. " 'A condition *precedent* refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties . . . .' [Citation.] In general, 'conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy.' " (*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 290.)

The protective safeguards endorsement here states: "As a condition of this insurance, you are required to maintain the protective defenses or services listed in the Schedule above." The schedule requires a "fully functional and actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source with a semi-annual service contract." (*Ibid.*) Thus, protective safeguards endorsements, similar to this one, are conditions of coverage. Jalisco's failure to maintain the automatic fire extinguishing precludes coverage under the terms of the endorsement. (*American Way, supra,* 216 Cal.App.4th at p. 1054.)

26

Additionally, the policy language and the application process made it plain and clear that Jalisco was required to have sufficient protective safeguards over its cooking surfaces. Because Century is a surplus lines carrier, it requires a new policy application, new binder and new policy each year. The 2007 application asked Jalisco to confirm that it had an automatic fire suppression system over "ALL cooking surfaces." The 2007 quote asked Jalisco to warrant that it had a "fully functional [and] actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source with a semi-annual service contract." The binder contained identical warrant language.

The cover of the policy states that it contains endorsements. The schedule of forms and endorsements lists protective safeguards in the section of forms applicable to property coverage, along with other forms regarding conditions and exclusions.

The protective safeguards endorsement itself is clearly labeled as an endorsement. It is a separate two-page form with a bold heading just below large all capital print stating "THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY." Using the same language as the quote and the binder, the endorsement states that as a condition of coverage, Jalisco was required to maintain a "fully functional and actively engaged fire extinguishing system over the entire cooking area with an automatic shut off for the heat source with a semi-annual service contract."

Therefore, we conclude the protective safeguards endorsement is sufficiently conspicuous, plain and clear to be enforceable. There is no ambiguity in the terms of the policy or in the notice provided to Jalisco and its agent regarding the requirement.

27

Because Jalisco failed to maintain an automatic fire extinguishing system over its back kitchen as required, coverage is precluded. (*American Way, supra,* 216 Cal.App.4th at pp. 1054-1056.)

### D. Conclusion.

Century owes no policy benefits under the contract based upon both the defense of misrepresentation in the application and the failure of Jalisco to comply with the protective safeguards endorsement. Because no benefits are due, there is also no basis for plaintiffs' bad faith claim. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35-36.) As such, Century is entitled to judgment regarding plaintiffs' claims. Because we reverse the judgment, including the award of contract damages to plaintiffs from Century, the trial court must consider on remand what, if any, issues remain to be decided regarding Century's cross-complaint against Pacific and we do not reach Pacific's conditional cross-appeal.

### II

### *MOTZ'S APPEAL REGARDING ATTORNEY FEES*

### A. Fees Awarded to Century

The trial court awarded attorney fees to Century as damages on its cross-complaint against Motz for negligent misrepresentation. The court awarded 10 percent of the fees sought by Century based upon the fact that the jury awarded Century 10 percent of the amount of benefits the jury found payable to plaintiffs by Century under the policy. The trial court determined that this indicated the jury found Motz's negligence to be

28

responsible for 10 percent of Century's denial of the policy and that this comparative fault analysis was reasonable.

Motz appeals the attorney fee award in favor of Century arguing that (1) attorney fees are not recoverable as damages on Century's negligent misrepresentation claim because this would violate the "American rule," (2) there is no contract with Motz upon which to base the award of attorney fees, (3) there is no statute allowing recovery of attorney fees against Motz, and (4) recovery is not available under Code of Civil Procedure section 1021.6. We disagree with the first and fourth arguments and, as a result, do not reach the remaining arguments.

We review the issue of whether attorney fees can be an element of tort damages as an issue of law subject to independent review. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

The tort of another doctrine, as set forth by the Supreme Court in *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618 (*Prentice*), holds that "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Id*. at p. 620.) The doctrine is an exception to the general rule, codified in section 1021, "that each party is to bear his own attorney fees unless a statute or the agreement of the parties provides otherwise." (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 (*Gray*).) The tort of another doctrine, which is also referred to as the " 'third party tort' exception" is "embodied in the

29

Restatement of Torts and is generally followed in the United States." (*Gray, supra,* at p. 505, citing Rest.2d Torts, § 914, subd. (2), and appen.)

In *Gray,* a real estate broker misrepresented to a potential buyer that his offer to purchase property was accepted and the buyer undertook expenditures in reliance on those representations. When the broker told the buyer that the seller no longer wanted to sell, the potential buyer sued the seller for specific performance and sued the broker for fraud. While the court did not require specific performance from the seller, the trial court awarded damages against the broker for fraud, including attorney fees. The Supreme Court upheld the award of fees as damages because the misrepresentation was the "direct cause" of the action against the sellers. (*Gray, supra,* 35 Cal.3d at p. 507.)

"[T]he so-called 'third party tort exception' to the rule that parties bear their own attorney fees is not really an 'exception' at all but an application of the usual measure of tort damages. . . . Indeed, this point was made clear in *Prentice[, supra,* 59 Cal.2d 618] itself when the court stated it was 'not dealing with "the measure and mode of compensation of attorneys" but with damages wrongfully caused by the defendant's improper actions.' [Citation.]" (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 (*Sooy*).) Thus, because the tort of another doctrine is "in fact an element of tort damages, nearly all of the cases which have applied the doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees." (*Ibid.*) "[W]hen a defendant's tortious conduct requires the plaintiff to sue a third party, or defend a suit brought by a third party, attorney fees the plaintiff incurs in this third party action 'are recoverable as

30

damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action.' " (*Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311, 1325 (*Third Eye Blind*).)

In this case, the jury found that Motz made material false representations to Century, upon which Century reasonably relied to its detriment. As the trial court found, "the evidence was unrefuted that if Century had known the true circumstances—that there was not an automatic fire suppression system over all cooking areas—the policy would not have issued. And, absent a policy, there would have been no coverage litigation."

Therefore, we conclude the trial court correctly determined that Century is entitled to recover damages from Motz in the form of attorney fees incurred in defending plaintiffs' action. Consistent with the tort of another doctrine, the trial court did not award attorney fees for fees incurred in Century's litigation against Motz, but those Century incurred in defending the litigation brought against it by plaintiffs as a result of Motz's conduct.

Motz also argues, for the first time on appeal, that Century is not entitled to fees under Code of Civil Procedure section 1021.6 because Century does not meet the statutory requirements. Under Code of Civil Procedure section 1021.6, a court may award attorney fees incurred in third party litigation if: (1) the indemnitee prevailed "on a claim for implied indemnity;" (*id.* at subd. (a)); (2) a tort committed by the indemnitor required the indemnitee to bring an action against or defend an action by a third party; (3) the indemnitor was "notified of the demand to bring the action or provide the defense"

31

(*id.* at subd. (b)) during the third party litigation and refused to do so; and (4) the indemnitee was "without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting summary judgment, a nonsuit, or a directed verdict." (*Id.* at subd. (c).)

We reject Motz's contention that Code of Civil Procedure section 1021.6 is applicable to all claims for attorney fees under the tort of another doctrine. To the extent Code of Civil Procedure section 1021.6 codifies the tort of another doctrine, it does so only for claims of implied indemnity. (*Burger v. Kuimelis* (N.D. Cal. 2004) 325 F. Supp. 2d 1026, 1041-1043 [applying California law].) Century did not seek fees based upon a theory of implied indemnity, but rather for damages as a result of negligent misrepresentation. Therefore, Code of Civil Procedure section 1021.6 is not applicable. The award of fees to Century is affirmed.

## B.  Fees Awarded to Plaintiffs

Motz also appeals the fees awarded to the plaintiffs arguing that plaintiffs are not entitled to fees under the tort of another doctrine and because plaintiffs did not comply with Code of Civil Procedure section 1021.6. Motz also contends that the trial court abused its discretion in finding Motz and Century jointly and severally liable for a portion of plaintiffs' attorney fees and did not properly apportion the fee award.

The trial court awarded attorney fees to plaintiffs against Motz under the tort of another doctrine citing *Third Eye Blind, supra,* 127 Cal.App.4th 1311. The court rejected Motz's argument that his negligence did not precipitate the coverage dispute with Century based upon the jury's finding that he was liable for the business loss claim. The court

32

noted "the jury only awarded damages to plaintiffs based on the Motz defendants' negligence with respect to the provision of lost business income coverage, but that was because the jury was instructed not to award negligence damages against the Motz defendants under the policy if the jury had awarded those damages against Century . . . . The Motz defendants' conduct, particularly with respect to the supplemental restaurant questionnaire in 2007, unquestionably gave Century a viable defense it might not otherwise have had."  Concluding that Motz's conduct added to the cost of litigation for plaintiffs on the coverage issues, the court awarded fees to plaintiffs under the tort of another doctrine.[9]

We agree with the court's rationale.  However, we reverse the plaintiffs' fee award against Motz and remand for the trial court to conduct further proceedings to determine if plaintiffs are entitled to attorney fees given our holding that Century is not liable to plaintiffs.

DISPOSITION

The judgment is reversed with directions for the court to enter judgment in favor of Century as to plaintiffs' claims, and to conduct further proceedings consistent with this

---

[9]  We note that the jury did enter a damage award against Motz for $382,497.99 for loss of insurance benefits in addition to the $22,871 award for uncovered business income, which is the same amount the jury awarded against Century.  However, apparently based upon the agreement of the parties, the trial court entered judgment for plaintiffs against Motz only for $17,152.35($22,871 less 25 percent for plaintiffs' comparative fault).  Plaintiffs did not appeal or cross-appeal the amount of the judgment against Motz.  However, the trial court should consider if it is appropriate to enter judgment against Motz for the loss of insurance benefits based upon the jury's finding.

33

decision.  The award of attorney fees to Century from Motz is affirmed.  Century shall recover its costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.

O'ROURKE, J.