Filed 7/21/16  Fireman's Fund Ins. Co. v. Heller, as Trustee CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FIREMAN'S FUND INSURANCE CO., | B256971 |
| Plaintiff, Cross-defendant, and Respondent, | (Los Angeles County Super. Ct. No. BC461995) |
| v. | |
| RICHARD HELLER, as Trustee, etc., et al., | |
| Defendants, Cross-complainants, and Appellants; | |
| DEBEIKES INSURANCE AGENCY et al., | |
| Cross-defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rita J. Miller and Mary H. Strobel, Judges.  Joseph R. Kalin, Judge.  (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed and reversed.

Hamrick & Evans, A. Raymond Hamrick, Douglas K. Lackey; Esner, Chang & Boyer, and Stuart B. Esner for Defendants and Appellants Richard Heller, Individually and as Trustee, etc., et al. and Cross-complainants and Appellants Richard Heller, as Trustee, etc., et al.

Ford, Walker, Haggerty & Behar, Mary B. Pendleton, Carmela E. Blair; The Ehrlich Law Firm, and Jeffrey I. Ehrlich for Cross-defendants and Appellants DeBeikes Insurance Agency et al.

Horvitz & Levy, Barry R. Levy, S. Thomas Todd, Stephen E. Norris; Tressler, Mohammed Sadegh Mandegary, and Mary E. McPherson for Plaintiff, Cross-defendant, and Respondent Fireman's Fund Insurance Company.

_____

Fireman's Fund Insurance Company (FFIC) sued its insureds—persons and entities we refer to as the Hellers—to rescind a portion of the Hellers' insurance policy and recover sums paid under the policy.[1]  The Hellers cross-complained against FFIC for breach of contract and breach of the covenant of good faith and fair dealing.

The trial court granted FFIC's:  (1) motion for summary adjudication of its rescission cause of action and related declaratory relief causes of action, (2) motion for summary judgment on its reimbursement causes of action; and (3) motion for summary judgment on the Hellers' cross-complaint.  After judgment was entered in FFIC's favor, the Hellers appealed.

The Hellers challenge the court's summary adjudication and summary judgment orders.  We agree with the Hellers that a triable issue exists as to FFIC's seventh cause of action for reimbursement of FFIC's payment to settle underlying litigation.  We reject the Hellers' other contentions.

_____

[1]  The Hellers include:  Richard Heller and Joel Heller, individually and as trustees of the Kenneth B. Heller Inter Vivos Trust Agreement; J.K.R. Limited Partnership; and Karen Heller Rudnai.

In the parties' pleadings and briefs on appeal, and in the judgment, "The Heller Companies, Inc.," is listed as a defendant, cross-complainant, appellant, and judgment debtor.  It is undisputed, however, that The Heller Companies, Inc. is a "non-existent entity."  FFIC's complaint and the judgment also list "The Kenneth B. Heller Trust," as a party.  A trust, however, cannot sue or be sued. (*Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473.)

2

The Hellers owned a parcel of property on the corner of Whittier Boulevard and Esperanza Street in Los Angeles (the Whittier property). There were two buildings on the property: a single-story building fronting Whittier Boulevard (the front building); and a separate, two-story building (the rear building) located behind the front building and adjacent to Esperanza Street. The front building had been used as a furniture store (known as "Hall's Furniture"), a clothing store, and a banquet hall. The rear building had been used to store furniture.

By 2008, the Whittier property was no longer used as a furniture store. In February 2008, the Hellers leased the entire property for a five-year term to Faustino Gamez and Gamez Auto Center for "[a]uto repair and any other legal uses." Gamez thereafter used the property to operate an automobile repair business. The Hellers permitted Gamez to sublease the property. Gamez did so, subleasing portions of both buildings to others, who operated a key shop and a glass business.[2] The Hellers were aware of these uses. Gamez or his sublessees also used the rear building area for storing cars, car parts, oil, paint, and paint thinner.

DeBeikes Insurance Agency was the Hellers' insurance broker since 1993.[3] In June 2009, the DeBeikes sent to Joel Heller a list of properties indicating the properties' valuations and past or present uses. The DeBeikes told Joel Heller they needed "the updated values to obtain quotations," and asked Heller to "make any changes in the list required." The list described the front building as:

---

[2] At the time the Hellers and Gamez entered into the lease, the City of Los Angeles had permitted the Whittier property for retail/warehouse use, and not for use as an automobile repair facility. In August 2008, the Los Angeles Department of Building and Safety (LADBS) informed the Hellers that the unauthorized use of the Whittier property for automobile repair violated the City of Los Angeles ordinances. LADBS records indicate that the property continued to be used as a non-permitted automobile repair facility throughout the relevant time period.

[3] The Hellers cross-complained against DeBeikes Insurance Agency and its principals, Daniel DeBeikes and Richard DeBeikes. We will refer to them individually or collectively as "the DeBeikes."

"3575 WHITTIER BLVD. LOS ANGELES, CA 90023

BANQUET HALL_CLOTHING-NEW"

The rear building was listed as:

"REAR 3575 WHITTIER BLVD. LOS ANGELES, CA 90023

HALL'S FURNITURE STORAGE."

Heller provided the DeBeikes with updated values for the listed properties, but did not inform the DeBeikes of any changes to the buildings' uses.[4]

In July 2009, the DeBeikes prepared the Hellers' insurance application using standardized forms. In the spaces on the application forms for specifying "Premises Information," "Nature of Business/Description of Operations by Premise(s)," and "Schedule of Hazards," the DeBeikes referred the prospective insurer to attached schedules. The attached schedules included the list of properties that referred to the Whitter property as "BANQUET HALL_CLOTHING-NEW" and "HALL'S FURNITURE STORAGE."

The application forms also called for the applicant to state whether there was "[a]ny exposure to flammables, explosives, [or] chemicals" on the properties. The Hellers (or their broker, the DeBeikes) marked a box to indicate "yes," and explained: "USUAL TO THE MANUFACTURING AND WHOLESALE LOCATIONS ON THE SCHEDULE." The words "manufacturing" and "wholesale" did not appear on the property schedules. Two of the listed properties, however, indicated that they were used for "MFG."[5] This designation was not used in connection with the Whittier property, and the application did not otherwise indicate that there were any flammables, explosives, or chemicals on the Whittier property.

---

[4] Richard DeBeikes testified that he expected the Hellers to update the current tenant-use information for the scheduled properties. Joel Heller, however, stated that he understood that the words under the addresses referred to the "historical" uses of the property, not the then-current uses.

[5] One property in Perris is described as "MFG SPRAY EQUIP." The second, in Camarillo, is described as "MFG AND OFFICES."

4

The DeBeikes submitted the application forms and schedules to Networked Insurance Agents (NIA), FFIC's authorized agent. On July 31, 2009, NIA provided the Hellers with a proposal for a quote and forwarded the application to FFIC. After some revisions not relevant here, NIA resubmitted the applications and schedules to FFIC on August 4 and August 17.

Shanon Fretwell was FFIC's underwriting specialist for the Hellers' application. In a declaration, Fretwell stated that she relied on information provided in the application forms and accompanying documents, as well as information provided by the applicant's broker, to determine whether FFIC would insure a particular location and, if so, the amount of the premium for the location. She considered, among other facts, the nature of the occupancy of buildings and the business operations conducted at the location. If the description of the location indicated that it "could present hazards and exposures" that might be material to the underwriting decision, Fretwell would seek additional information about the property.

Fretwell understood the statements regarding the Whittier property in the Hellers' property schedules to mean that the Whittier property was being used as a banquet hall and retail clothing store, and for furniture storage. She never received any information to indicate otherwise.

When Fretwell had questions about the Hellers' application, she contacted Michelle Wallace at NIA, who communicated with the DeBeikes. Fretwell asked Wallace about the "banquet hall," and was informed that there was "no live entertainment/dancing on [the] premises," that when the banquet hall was rented the tenant would be required to provide certificates of insurance naming the Hellers as additional insureds, and that the building had been updated in 1980.[6] Fretwell's

_____

[6] The DeBeikes point out that there is no evidence that the Hellers or the DeBeikes provided this information about the banquet hall to Wallace or Fretwell. The DeBeikes speculate that Wallace may have "[taken] it upon herself to answer the question the way she thought would cause Fretwell to write the coverage for the lowest premium."

5

underwriting notes state that she "confirmed no live entertainment/dancing on premises." Based on a conversation with Wallace about the reference to "HALL'S FURNITURE STORAGE," Fretwell determined that the space was used to store "just a small amount of furniture."

Based on the information provided in the applications and the responses she received from her inquiries, Fretwell classified the Whittier property as a "Light Hazard."

Fretwell stated that if she had been informed that the Whittier property was used for automobile repair, she would have "at the very least classified it" as a " 'Moderate Hazard.' " The different classification, she explained, would have not only materially changed the premium calculation, but would have required a physical inspection of the premises.[7] She would have also made additional inquiries regarding the maintenance and storage of rags and chemicals, and the existence and location of a paint spray booth. If persons were not living on the premises, the premium for the location as an automobile repair facility would have increased by 15.4 percent or 15.5 percent. If an inspection revealed that persons were living on the premises, the location would not have qualified for coverage by FFIC.

In reliance upon the Hellers' applications, the accompanying schedules, and the information provided to Fretwell, FFIC issued two policies to the Hellers: an "American Business Coverage Policy" (the primary policy) and an umbrella policy. The primary policy provided that it is void if any insured, at any time, "intentionally conceal[s] or misrepresent[s] a material fact concerning" the policy or the property covered by the policy. The term of the policies was one year and expired on August 6, 2010.

On July 26, 2010, a fire occurred in the rear building of the Whittier property. Heller thereafter made a claim under its FFIC policy for property damage caused by the fire.

---

[7] Fretwell ordered inspections of the two properties the Hellers indicated were being used for "MFG."

6

In October 2010, the Hellers were sued for damages for the wrongful death of one person and personal injuries suffered by a second person caused by the fire (the *Zepeda* action). The complaint in the *Zepeda* action alleged that rooms on the premises were rented as residences to individuals, and that businesses on the property used flammable liquids, including gasoline, grease, paint, and paint thinners. The plaintiffs alleged that the Hellers negligently maintained and supervised the building so as to constitute a "fire trap" for the residents, which caused the death and injuries alleged in the complaint.

In January 2012, the Hellers were sued for damages for the wrongful death of a second person who died in the July 2010 fire (the *Landeros* action). The complaint in the *Landeros* action alleged facts similar to the facts alleged in the *Zepeda* action. We refer to both lawsuits as the "underlying tort actions."

The Hellers tendered the defense of the underlying tort actions to FFIC. FFIC agreed to defend the Hellers subject to a "full and complete reservation of rights." Among other rights, FFIC expressly reserved its right to sue the Hellers for a judicial determination that it had no duty to defend or indemnify the Hellers, and that it had the right to rescind its policy and seek reimbursement for defense costs and any settlement or other indemnity payments. FFIC allowed the Hellers to retain independent counsel to represent them in the underlying tort actions.

The superior court consolidated the underlying tort actions. While they were being litigated, FFIC sued the Hellers for rescission, reformation, and declaratory relief. In the operative second amended complaint, FFIC sought: (1) to rescind the Hellers' policies as to coverage of the Whittier property, (2) judicial declarations that FFIC owed no duty to indemnify the Hellers for loss or damage to the Whittier property or to defend or indemnify them in the underlying tort actions, and (3) reimbursement for the cost of defending the Hellers in the underlying tort actions and for any indemnity payments arising from coverage for the Whittier property.

The Hellers filed a cross-complaint against FFIC, the DeBeikes, and NIA. The Hellers alleged that FFIC breached their insurance contract and the covenant of good

7

faith and fair dealing by denying their property claim and asserting that it had the right to rescind the policy.

In November 2012, FFIC filed a motion for summary adjudication of its causes of action for rescission and declaratory relief to determine FFIC's duties with respect to the claims arising from the Whittier property.

While FFIC's motion was pending, mediation proceeded in the underlying tort actions in April and May 2013. In connection with the mediation, FFIC informed the Hellers in writing that it planned to settle the underlying tort actions for $3.5 million, and reserved the right to seek reimbursement from the Hellers. FFIC further informed the Hellers that if they objected to the settlement, they could assume the defense of the underlying tort actions. The Hellers did not inform FFIC that they objected to the settlement or that they agreed to take over the defense. On May 31, 2013, FFIC settled the underlying tort actions for a total of $3.5 million.

In June 2013, the trial court granted FFIC's motion for summary adjudication of its rescission cause of action and the related declaratory relief causes of action. Based on that ruling, the court subsequently granted FFIC's motion for summary judgment on the Hellers' cross-complaint.

After FFIC dismissed its second cause of action for reformation of the policies, its causes of action for reimbursement remained. In December 2013, FFIC moved for summary judgment and sought $954,836.87, plus $133,981.14 in prejudgment interest for its cost of defending the Hellers in the underlying tort actions, and $3,499,980, plus $75,752.99 in prejudgment interest for indemnifying the Hellers. In March 2014, the court granted the motion and awarded FFIC the amounts it sought. After judgment was entered, the Hellers and the DeBeikes appealed.[8]

---

[8] The DeBeikes are parties in the underlying action, but are not named in the judgment from which it is appealing. FFIC does not assert, however, that the DeBeikes do not have standing to appeal.

**DISCUSSION**

I.       *Standard of Review*

Summary judgment is proper when all the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); Code Civ. Proc., § 437c, subd. (c).)  A plaintiff moving for summary judgment bears an initial burden of proving each element of its cause or causes of action in question.  (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)  If the plaintiff meets this burden, the defendant has the burden to demonstrate one or more triable issues of material fact as to the plaintiff's cause of action or a defense thereto.  (*Ibid.*)  " 'The defendant . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'  [Citation.]" (*Id.* at p. 849)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p. 850)

In reviewing summary judgment, "[w]e review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017–1018.)

II.       *Rescission*

Insurance Code section 359[9] provides that an "injured party is entitled to rescind the contract" when "a representation is false in a material point."  Section 331 provides that "[c]oncealment, whether intentional or unintentional, entitles the injured party to

---

The Hellers expressly incorporate the arguments raised in the DeBeikes's briefs on appeal.  We thus address, to the extent necessary, the DeBeikes's arguments as the Hellers' arguments.

[9] Unless indicated otherwise, statutory references are to the Insurance Code.

rescind insurance." "Concealment" is defined as the "[n]eglect to communicate that which a party knows, and ought to communicate." (§ 330.) These statutes "are part of a larger statutory framework that imposes 'heavy burdens of disclosure' 'upon both parties to a contract of insurance,' " and "permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance." (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 468-469 (*Mitchell*).) The insurer is not required to prove that the insured intended to deceive the insurer. (*Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 (*Thompson*); Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 5:169, p. 5-50 (*Croskey*).)

The materiality of a misrepresentation "is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. [Citations.]" (*Thompson*, *supra*, 9 Cal.3d at p. 916; see § 334.) This is a *subjective* test; the critical question is whether truthful information would have affected underwriting decisions by the insurer that issued the policy, not "some 'average reasonable' insurer." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 181 (*Sogomonian*); *West Coast Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 187.) Relevant underwriting decisions include the decisions whether to make inquiries or to enter into the contract, the insurer's estimation of the degree or character of the risk it is being asked to insure, and the amount of the insurance premium. (*Old Line Life Ins. Co. v. Superior Court* (1991) 229 Cal.App.3d 1600, 1604; *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1269 (*LA Sound*); § 334.) Although the materiality of a misrepresentation is generally a factual issue, it is a question of law when only one conclusion can reasonably be drawn from the evidence. (*Sogomonian*, *supra*, 198 Cal.App.3d at p. 182.)

A.     *Materiality of the Hellers' Misrepresentations and Concealment*

Here, it is undisputed that the Hellers, through their broker, submitted insurance application forms that required "Premises Information," the "Nature of Business/Description of Operations by Premise(s)," and a "Schedule of Hazards."

10

The Hellers responded by referring the prospective insurer to property schedules that indicated that the front building on the Whittier property was used as a banquet hall and clothing store, and that the rear building was used for furniture storage. It is also undisputed that the Whittier property was not then used as a banquet hall or clothing store, or for storing furniture; it was used as an automobile repair shop (among other uses), and the rear building was used for storing cars, car parts, oil, paint, and paint thinner.

In addition, the Hellers responded to a question on the application form asking about exposure to flammables, explosives, and chemicals by indicating that there was such exposure at the manufacturing and wholesale locations listed on the property schedule and, by implication, that there was no such exposure at other locations. Nothing in the schedules suggests that the Whittier property was a manufacturing or wholesale location, or that there were any flammables, explosives, or chemicals at the Whittier property.

The Hellers' references to banquet hall, clothing store, and furniture storage in connection with the Whittier property constitute misrepresentations about the use of the property, and the failure to identify the property's use as an automobile repair shop or to disclose the presence of flammables and chemicals on the property constitutes concealment. (See § 358 ["[a] representation is false when the facts fail to correspond with its assertions or stipulations"]; § 330 [concealment is the "[n]eglect to communicate that which a party knows, and ought to communicate"].) FFIC did not learn the truth about the property until after the July 2010 fire.

Although the Hellers describe the references to a banquet hall, clothing store, and furniture storage in their brief on appeal as "*purported* misrepresentations," they do not challenge the assertion that the affirmative statements were false or point to any evidence showing that they disclosed to FFIC that the property was being used as an automobile repair shop or that flammables or chemicals were present on the property. (Italics added.) The issue, they assert, is the *materiality* of the misrepresentations. This issue, as noted

11

above, is determined from the perspective of the insurer. (See *Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 191.)

FFIC's perspective on materiality is evidenced by Fretwell's declaration, in which she states that, if she had known that the Whittier property was used for automobile repair or that flammables or chemicals were present, she would have, at a minimum, made additional inquiries, ordered an inspection of the property, and classified the property as a moderate, instead of a light, hazard. If an inspection revealed persons living on the premises, the property would not have been eligible for coverage by FFIC. Even if persons were not living on the premises, the different use and higher risk would have increased the premium for the location by more than 15 percent. This evidence is sufficient to establish the materiality of the misrepresentations and, therefore, a prima facie right to rescind.

The Hellers argue that FFIC should have separately evaluated and underwritten the two buildings. If FFIC had done so, they contend, the misrepresentation as to the front building—that it was used for a banquet hall and a clothing store—would justify rescission of coverage as to the front building only; such rescission would not affect coverage for the rear building, where the fire occurred. If we accept that argument, the Hellers contend, the question is whether the misrepresentation as to the rear building— that it was used for furniture storage—was material. According to the Hellers, the misrepresentation was not material (or at least triable issues exist as to materiality) in light of evidence that: (1) the Hellers represented that the rear building was used for furniture storage; (2) a building used for furniture storage is a "warehouse"; (3) a warehouse, according to FFIC's underwriting guidelines and the Hellers' expert witness, should have been classified as a moderate hazard; (4) if FFIC had been aware of the truth about the rear building—that it was being used for storing cars and car parts—it would have similarly classified it as a moderate hazard; and (5) therefore, regardless of whether the rear building was used for storing furniture, as the Hellers had represented, or for storing cars and car parts, FFIC would have classified the property as a moderate hazard and charged the same premium.

12

This argument, which assumes that FFIC should have considered the purported furniture storage building as a warehouse and a moderate hazard, misunderstands the test for materiality. As set out above, misrepresentations are material if the insurer's knowledge of the truth would probably and reasonably have affected its underwriting decisions. (See *Thompson*, *supra*, 9 Cal.3d at p. 916; *Old Line Life Ins. Co. v. Superior Court*, *supra*, 229 Cal.App.3d at p. 1604; §§ 334, 360.) The inquiry thus requires a comparison between the underwriting decisions that FFIC probably and reasonably would have made if it had known the truth and the decisions FFIC actually made based upon the misrepresentations. The comparison is not, as the Hellers assume, between the decisions the insurer would have made if it had known the truth and the decisions the insurer *should have made* based upon the insured's misrepresentations.[10]

Here, the Hellers do not dispute that if FFIC had known the truth about the nature and use of the rear building, it would probably and reasonably have classified the location as a moderate hazard. There is also no material dispute that Fretwell *actually* classified the risk as a light hazard in reliance upon the Hellers' application.[11] Fretwell's estimation of the risk that FFIC was undertaking in insuring the Whittier property would thus have been affected by her knowledge of the truth—at a minimum, what she had

---

[10] The Hellers' argument that Fretwell should have considered the rear property as a warehouse and a moderate hazard implies that Fretwell and FFIC owed a duty to the Hellers to evaluate their application in a particular manner and classify the risk a certain way. They offer no authority for this proposition. Indeed, it would appear to be contrary to the general rule that " ' "[a]n insurance company is entitled to determine for itself what risks it will accept" and that it may exercise "a wise discrimination . . . in selecting its risks." [Citations.]' " (*Sogomonian*, *supra*, 198 Cal.App.3d at pp. 180-181.) If FFIC has the right to decide whether to accept a risk, it has the right to evaluate and classify that risk in whatever lawful manner it deems appropriate. There is no basis in the record for concluding that FFIC owed a duty to the Hellers to evaluate the two buildings separately, to treat the rear building as a warehouse, or to classify it as a moderate hazard.

[11] In their opposing separate statement, the Hellers state that they dispute the proffered fact that FFIC relied on the Hellers' representations in evaluating the risk and determining the premium. The evidence they cite, however, does not contradict Fretwell's declaration or create a triable issue on that point.

13

classified as a light hazard would have been classified as a moderate hazard. To the extent there is a dispute as to whether Fretwell *should have* classified the risk as a moderate hazard before she knew the truth, that dispute is irrelevant to the materiality inquiry and does not create a triable issue.

Although the Hellers do not dispute that FFIC would have reasonably and probably classified the rear building as a moderate hazard if it had known the truth, they dispute Fretwell's conclusion that FFIC would have increased the premium for the property. They contend that factual issues exist as to the accuracy of Fretwell's calculations and the veracity of her conclusions. They point to various subjective and discretionary decisions Fretwell made during her evaluation of the application and adjustments she made in calculating the premium, and argue that if Fretwell had known the property's actual use, she could have made other decisions and adjustments to arrive at the same premium.[12] The argument, however, is speculative and insufficient to create a triable issue of fact.

The Hellers also point to certain alleged inconsistencies in statements Fretwell made in her initial declaration, a supplemental declaration, and during her deposition. Much of their argument is based on comparing statements concerning different calculations. The Hellers point out, for example, that Fretwell stated in her original declaration that she applied a "light" risk rating factor of 12.09 to the Whittier property, "then changed that rate factor to 5.35 in her later supplemental declaration." A close reading of the two declarations, however, reveals no inconsistency. In the original declaration, Fretwell referred to the 12.09 rating factor without discussing a discount and other factors that were applied before the premium was determined. In the supplemental

---

[12] In particular, Fretwell classified the purported banquet hall as "store, other," and as a "light" risk; she referred to the purported furniture storage building as a warehouse, but nevertheless classified it as light risk despite FFIC guidelines that provide that a warehouse is a moderate risk; she evaluated the front and rear buildings as a single location; she used insurance-to-value figures that were lower than the figures authorized in FFIC's guidelines to reduce coverage and the premium; and she applied discretionary discounts to arrive at the final premium.

declaration, the identical 12.09 rating factor was described as the base rate, which was reduced by a "Company Discount" and various rating factors to arrive at the "Final Rate" of 5.35. The supplemental declaration merely expanded upon the process for calculating the premium described in the original declaration; it did not create an inconsistency. Other alleged inconsistencies were similarly mischaracterized or were otherwise insufficient to create a triable issue.

The Hellers' primary argument—that the rear building was a warehouse and a warehouse was a moderate hazard—does not address the failure to disclose the presence of flammables and chemicals on the Whittier property. As to this nondisclosure, the Hellers contend that FFIC is estopped from rescinding the policy on this basis because it "never asked about exposures to flammables, explosives or chemicals for 'retail operations.' " The contention is without merit. The applications submitted to FFIC specifically asked the Hellers to state whether there was "[a]ny exposure to flammables, explosives, [or] chemicals" on the properties. The Hellers marked a box to indicate "yes," and explained that there was such exposure at the manufacturing and wholesale locations listed on the property schedule, but did not include the Whittier property in that category. The response implied that flammables, explosives, and chemicals were *not* present on properties that were not identified as manufacturing and wholesale locations. FFIC was entitled to rely on this implied statement and had no obligation to inquire further about the existence of such items on other properties. (See *Mitchell*, *supra*, 127 Cal.App.4th at p. 476; *LA Sound*, *supra*, 156 Cal.App.4th at pp. 1270-1271.)

B.     *The Heller's Expert Witness Declaration*

The Hellers contend that the trial court erred in sustaining FFIC's objections to a declaration by Richard Masters, an insurance underwriting expert. The pertinent statements by Masters can be summarized as follows: (1) FFIC should have rated and underwritten the two buildings separately; (2) The rear property should have been rated as a "warehouse," and FFIC's guidelines provide that a warehouse was to be rated as a "moderate occupancy hazard"; (3) Fretwell's characterization of the rear building as a light hazard was contrary to FFIC guidelines and not based on any misrepresentation in

15

the Hellers' application; (4) If the two buildings were underwritten and rated separately, the Hellers' misrepresentation as to the front building would not have affected the underwriting of the rear building, and there would be no claim of misrepresentation as to the rear building; (5) Fretwell used various "underwriting activities" to obtain a lower premium in order to "garner this large account"; (6) These activities include using "insurance to value numbers" lower than those proposed by NIA, thereby putting the Hellers "in an underinsured position," and combining the two buildings in order to arrive at a "package policy premium figure" commensurate with the NIA quote; (7) Although Fretwell testified that she would have ordered an inspection of the Whittier property if she knew that the front building was used for auto repair, there was no need to inspect the rear building; (8) Fretwell used "so many arbitrary reductions [to the premium] it is highly suspect whether the total premiums ultimately charged would have been higher" if there were no misrepresentations; (9) FFIC issued polices to the Hellers for years 2000 to 2005, which indicated that FFIC previously rated the two buildings separately; and (10) Fretwell imprudently failed to inquire whether there were flammables, explosives, or chemicals at the retail locations.

FFIC objected to these statements on grounds, among others, that they were irrelevant and constituted improper expert testimony. The court, in its written ruling granting summary adjudication, did not specify the particular basis upon which it sustained the objections to the statements, but did note that "a significant portion of" Masters's declaration is "without foundation." Masters did not, for example, provide "any foundation for his opinion that the two buildings should have been evaluated separately." The court also stated that "much" of the declaration was "improper expert testimony and speculation, based on the reasoning in [*Mitchell*, *supra*, 127 Cal.App.4th 457]." We review the rulings for abuse of discretion. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181; *Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.)

*Mitchell* involved an analogous situation: an insurance carrier seeking summary judgment after rescinding a policy based on the insured's misrepresentations. The

16

insured submitted the declaration of an expert to show that the misrepresentations were not material to the underwriter and that the carrier waived its right to rescind by failing to investigate certain facts. (*Mitchell*, *supra*, 127 Cal.App.4th at p. 477.) The expert stated what the underwriter "allegedly knew or should have done" and opined that the insured's misrepresentations " 'were not material to [the underwriter] in her underwriting of th[e] policy.' " (*Id.* at pp. 477-478.) The Court of Appeal held that the trial court did not abuse its discretion in excluding the expert's opinions on the ground that they were based on speculation and irrelevant matter. (*Id.* at p. 478.) In particular, "testimony as to what someone else considered material is the type of speculation that a trial court may, in its discretion, exclude as not being appropriate opinion evidence." (*Ibid.*) Moreover, the expert's "discussion of what the underwriter should have done constituted inadmissible conclusions." (*Ibid.*)

As in *Mitchell*, the court's rulings in this case were not an abuse of discretion. As explained above, the materiality inquiry is focused on what Fretwell actually did and did not do (e.g., did not order an inspection of the property and did rate the property as a light hazard), and whether she would have done something different (e.g., order an inspection and rate the property as a moderate hazard) if the facts had not been misrepresented. Masters's statements about what Fretwell should have done is irrelevant, and his opinions about how Fretwell would have calculated insurance values or the premium if she had known the truth is speculative and an improper opinion. (See, e.g., *Dee v. PCS Property Management, Inc.* (2009) 174 Cal.App.4th 390, 404 [opinion based on speculative or conjectural facts has no evidentiary value].) To the extent that any of the court's rulings were erroneous, the Hellers have failed to establish that the errors were prejudicial.

C.    *Rescission Does Not Require Intentional Misrepresentation*

The Hellers further contend that FFIC was required to prove that they *intentionally* misrepresented or concealed material facts, and that it did not do so. We reject this argument. As the Hellers acknowledge, the rule in California is that an insurer can rescind a policy based on material misrepresentations in the insurance application even

17

when the misrepresentations are unintentional or inadvertent. (See, e.g., *Thompson*, *supra*, 9 Cal.3d at p. 916; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 78; *Mitchell*, *supra*, 127 Cal.App.4th at pp. 468-469, 473; *Superior Dispatch, Inc. v. Insurance Corp. of New York*, *supra*, 181 Cal.App.4th at p. 191). The rule is based in part upon the statutory provisions entitling the parties to rescind their insurance policy upon the other party's concealment, "whether intentional or unintentional" (§ 331), and for a material misrepresentation "from the time the representation becomes false" (§ 359). (See *Mitchell*, *supra,* 127 Cal.App.4th at p. 468.)

The Hellers, however, assert that the parties may agree on a rescission standard that is more favorable to the insured, and that the parties have do so here. They rely on the provision in the primary policy that stated that the policy is "void if [any insured], at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning" the policy or the property covered by the policy. Similar provisions have been construed by courts to apply to misrepresentations made *after* the policy was issued, and that the statutory rules apply to misrepresentations made in applying for the policy. (See *Mitchell*, *supra*, 127 Cal.App.4th at p. 473; *LA Sound*, *supra*, 156 Cal.App.4th at p. 1270; *Atmel Corp. v. St. Paul Fire & Marine* (N.D. Cal. 2005) 426 F.Supp.2d 1039, 1049; see generally *Croskey*, *supra*, ¶ 5:169.5, p. 5-50 – 5-51; but see *Clarendon Nat. Ins. v. Insurance Co. of the West* (E.D. Cal. 2006) 442 F.Supp.2d 914 (*Clarendon*).)

In *Mitchell*, the policy, which was in a form prescribed by statute, included the following provision: " 'Concealment, fraud: This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' " (*Mitchell*, *supra*, 127 Cal.App.4th at p. 470; see §§ 2070, 2071.) Although this provision applies by its terms to misrepresentations "made at any time," *Mitchell* held that the statutory right to rescind, which does not require proof of intent, "normally

18

govern[s] the parties' obligations during formation of the insurance contract."[13] (*Id.* at p. 473.)  The court explained that "[f]reedom of contract and the right of an insurer to make an informed decision whether or not to insure a given risk are strong policy considerations that support more liberal rescission rights for misrepresentations made at the inception of the insurance contract."  (*Id.* at p. 472.)  *Mitchell* cannot be meaningfully distinguished.

The Hellers rely on *Clarendon*, *supra*, 442 F.Supp.2d 914, a district court decision, which expressly rejected *Mitchell*.[14]  (*Id.* at p. 927-929.)  *Clarendon*, however, has been rejected as "unpersuasive" by the only California court to consider it. (*LA Sound*, *supra*, 156 Cal.App.4th at p. 1270 fn. 4; see also *Star Ins. Co. v. Sunwest Metals, Inc.* (C.D. Cal., 2014) 2014 WL 7383614 [*Mitchell*, not *Clarendon*, provides the "correct legal standard"].)  We also decline to follow it.

D.  *Summary*

FFIC submitted prima facie evidence that the statements and omissions in the Hellers' application constituted material misrepresentations and concealment, entitling it to rescind the insurance policies as to the Whittier property.  The Hellers failed to establish the existence of a triable issue of material fact.  Based upon our de novo review, FFIC is entitled to rescission as a matter of law.  Summary adjudication of its first cause of action was therefore proper.

Because FFIC was entitled to rescind its policies, it follows that it was entitled to the declarations it sought in its third, fourth, and fifth causes of action that it owed no

---

[13] This result is consistent with the nature of rescission, which extinguishes the policy "*ab initio*, as though it had never existed."  (*Sogomonian*, *supra*, 198 Cal.App.3d at p. 184; accord *LA Sound*, *supra*, 156 Cal.App.4th at p. 1266; *West Coast Life Ins. Co. v. Ward*, *supra*, 132 Cal.App.4th at p. 187.)  If the insurance policy is deemed to have never existed, the provision within the policy requiring intentional misrepresentation never existed.

[14] Although the *Clarendon* court stated that "*Mitchell* has been criticized" (*Clarendon*, *supra*, 442 F.Supp.2d at p. 929), it did not cite to any critical authority, and we have found none on the relevant point.

duty to pay the property claim arising from the fire or to defend or indemnify the Hellers in the underlying tort actions.  The court's rulings in FFIC's favor on these causes of action were therefore proper.

It further follows that FFIC was entitled to summary judgment on the Hellers' cross-complaint for breach of contract and breach of the implied covenant of good faith and fair dealing.  As the Hellers acknowledge, these causes of action are dependent upon the existence of insurance coverage for the Whittier property under the FFIC policies.  Because such coverage was properly rescinded, judgment in favor of FFIC on the Hellers' affirmative claims is also proper.

II.     *Reimbursement of Defense and Indemnity Expenses*

In its sixth cause of action, FFIC sought reimbursement of the fees, costs, and expenses it paid for the Hellers' defense of the underlying tort actions.  In its seventh cause of action, it sought reimbursement of the payment it made to settle the underlying tort actions.  In December 2013, FFIC moved for summary judgment or, alternatively, summary adjudication of these causes of action, and specifically sought $954,836.87, on the sixth cause of action (defense costs) plus $133,981.14 in prejudgment interest, and $3,499,980 on the seventh cause of action (indemnity payment), plus $75,752.99 in prejudgment interest.

In granting FFIC's motion for summary judgment, the court concluded that FFIC had a right to reimbursement of the fees and expenses it paid to defend and settle the underlying tort actions, and awarded FFIC the amounts it sought.  The only argument the Hellers assert on appeal to challenge FFIC's right to reimbursement assumes that we will reverse the court's rescission ruling.  Because we affirm the ruling on the rescission cause of action, this argument fails.[15]

---

**15** An insurer has a right of reimbursement from its insured of a reasonable settlement paid on the insured's behalf for a noncovered claim if the insurer:  (1) made a timely and express reservation of its right to seek reimbursement; (2) expressly notified the insured of its intent to accept a proposed settlement offer; and (3) expressly offered to the insured that they may assume their own defense when the insurer and insured

The Hellers further assert that, even if FFIC's has the *right* to reimbursement, triable issues remain as to the *amount* FFIC should be reimbursed. We agree in part.

As FFIC observes, the Hellers state in an argumentative heading in their opening brief that the court erred in awarding reimbursement of payments for indemnity *and defense costs*, but follow that heading with an argument that addresses only the indemnity issue. FFIC asserts that the Hellers have therefore waived any claim to reimbursement of defense costs. The Hellers did not respond to this assertion in their reply brief and present no argument as to reimbursement of defense costs. We therefore agree with FFIC that the Hellers have waived any claim of error as to court's ruling on the sixth cause of action for reimbursement of defense costs. (See *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 [point asserted without legal argument is deemed waived]; *Cequel III Communications I, LLC v. Local Agency Formation Com. of Nevada County* (2007) 149 Cal.App.4th 310, 328, fn. 5 [court need not address point asserted in argumentative heading but not discussed in text].)

As for reimbursement of the payment FFIC made to settle the underlying tort actions, each side agrees that FFIC can recover the settlement payment if and to the extent the amount was reasonable, and that the determination of reasonableness is ordinarily a question of fact. The question becomes a legal issue when "the evidence is undisputed and only one reasonable inference can be drawn from the evidence." (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346.)

FFIC supported its motion with a declaration by Richard Meyer, a "[c]laims [s]pecialist" for FFIC. Meyer stated that he "evaluated the Heller[s'] potential liability, potential jury verdicts and settlement options" and "reviewed and considered the status reports and evaluations prepared by the Heller[s'] counsel." He noted that the Hellers' trial counsel estimated that "even assuming only a 50% fault allocation to them, the

disagree whether to accept the proposed settlement. (*Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 502.) The Hellers do not dispute that FFIC satisfied these elements.

Heller[s] could face exposure in the range of $1.8 to $3.0 million in compensatory damages should the [underlying tort actions] proceed to trial." Meyer adds: "Should the Heller[s] be found to be 100% at fault, the damage exposure to them was even higher." Meyer concluded that the Hellers "could potentially face a jury verdict" of $10 million, in addition to punitive damages.

The Hellers opposed the motion with the declaration of their counsel in the underlying tort actions, A. Raymond Hamrick. Hamrick provided an extensive overview of the factual and legal issues in the litigation. According to Hamrick, discovery revealed that Gamez, the Whittier property tenant, sublet rooms on the premises as residences to individuals, one of whom started the July 2010 fire. According to Hamrick, Gamez stated in a declaration that the Hellers told him he could do whatever he wanted with the property, which he understood to mean that he could permit residential occupancy. Gamez stated that he had told Richard Heller that various individuals were living on the premises. Richard Heller denied that Gamez told him this.

In Hamrick's opinion, there was a 60 percent to 70 percent likelihood of a defense verdict in the cases. Applying those percentages to an "estimated range of damage awards yielded a . . . reasonable settlement range [of] a low of $1.4 million to a high of $2.4 million."

FFIC objected to Hamrick's declaration in its entirety on a variety of grounds, including relevance and improper opinion. The court sustained FFIC's objections to Hamrick's declaration, without specifying the ground or grounds upon which it relied. The court granted summary judgment, stating that the Hellers "did not object to [FFIC] paying the settlement or object to the reasonableness of the settlement amount."

Initially, we reject the trial court's apparent rationale that FFIC is entitled to the settlement amount regardless of whether it is reasonable merely because the Hellers did not object to the payment. The trial court did not mention, and none of the parties cite, any authority that would support such a rule. FFIC attempts to support the result by relying on a theory of estoppel, and asserts that the Hellers concealed a material fact (i.e., any objection they had to the proposed settlement), which induced FFIC to settle.

22

They cite to no authority, however, to support the assertion that the Hellers had a duty to express their opposition to the settlement as a prerequisite to challenging its reasonableness. Moreover, there is no evidence that the Hellers' silence in the matter induced FFIC to settle.

FFIC, as the party seeking reimbursement, had the burden of proving the reasonableness of the settlement payment (see *LA Sound*, *supra*, 156 Cal.App.4th at p. 1272) and, on its motion for summary judgment, had the initial burden to produce evidence sufficient to establish the prima facie reasonableness of the settlement. Here, FFIC provided the declaration by Meyer, a "claims specialist" who, after noting that Hellers' defense counsel had estimated a potential exposure of $1.8 million to $3 million based upon an assumption of 50 percent "fault allocation," stated his belief that the Hellers could face a verdict in excess of $10 million. Even if we assume that Meyer was competent to opine on the reasonableness of the $3.5 million settlement payment, he did not actually express such an opinion. The declaration, we conclude, was insufficient to satisfy FFIC's initial summary judgment burden of production. Accordingly, the court erred by granting summary judgment.

## DISPOSITION

The court's June 17, 2013, order granting summary adjudication of FFIC's first, third, fourth, and fifth causes of action is affirmed. The court's August 15, 2015, order granting FFIC's motion for summary judgment on the Hellers' cross-complaint is affirmed.

The judgment is reversed. The court shall vacate its March 6, 2014, order granting summary judgment and enter a new order granting summary adjudication as to FFIC's sixth cause of action and denying summary adjudication as to the seventh cause of action. The court shall conduct further proceedings not inconsistent with this opinion.

The parties to bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                         ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.